**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **LORAMAX LLC,** | |
| **Plaintiff,** | **Civil Action No. 2:15-cv-00677** |
| **v.** | **JURY TRIAL DEMANDED** |
| **THE DREYFUS CORPORATION,** | |
| **Defendant.** | |

**<u>DREYFUS'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

## TABLE OF CONTENTS

I.      BACKGROUND ................................................................................................. 2

II.     LEGAL STANDARD........................................................................................ 4

III.    ARGUMENT ..................................................................................................... 7

      A.      Distributing Information Based On User Preferences Is An Abstract Idea ............ 7

      B.      No "Inventive Concept" Saves The Claimed Abstract Idea .................................. 9

IV.     CONCLUSION................................................................................................. 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.com, Inc.*,
   No. 6:15-cv-0029-WSS-JCM, 2015 WL 3757497 (W.D. Tex. June 12, 2015) .....................15

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014)................................................................................................. *passim*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................................5

*Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
   687 F.3d 1266 (Fed. Cir. 2012)...........................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................................5

*Bilski v. Kappos*,
   561 U.S. 593 (2010)......................................................................................................1, 6, 7

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014).........................................................................................12

*Cardpool Inc. v. Plastic Jungle, Inc.*,
   No. C. 12-04182, 2013 WL 245026 (N.D. Cal. Jan. 22, 2013) .................................5

*Clear with Computers, LLC v. Altec Inds., Inc.*,
   No. 6:14-cv-00079, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015) ...........................5

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
   No. 6:12-CV-674, 2014 WL 923280 (E.D. Tex. Jan. 21, 2014)..........................................5, 7

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014)..........................................................................................12

*Cuvillier v. Sullivan*,
   503 F.3d 397 (5th Cir. 2007) ...............................................................................................4

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
   558 F. App'x 988 (Fed. Cir. 2014) ...........................................................................2, 6, 7, 8

*CyberSource Corp. v. Retail Decisions, Inc.*,
   620 F.Supp.2d 1068 (N.D.Cal. 2009) .................................................................................14

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014)..................................................................................12

*Eclipse IP LLC v. McKinley Equipment Corp.*,
    No. SACV 14-742-GW, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014)....................................5

*Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*,
    No. 12-1736-LPS-CJB, 2014 WL 4379587 (D. Del. Sept. 3, 2014) .......................................5

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
    No. 2:12-cv-800-WCB, 2015 WL 3452469 (E.D. Tex. May 29, 2015)
    (Bryson, J.).....................................................................................................7

*Loyalty Conversion Sys. Corp. v. American Airlines, Inc.*,
    No. 2:13-cv-655, 2014 WL 4364848 (E.D. Tex. Sep. 3, 2014) (Bryson, J.,
    sitting by designation)......................................................................................9, 10

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012)......................................................................................1, 6, 7

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    -- F.3d --, 2015 WL 3622181 (Fed. Cir. June 11, 2015) (Mayer, J. concurring)...........5, 12, 13

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    No. C-12-1233, 2012 WL 3985118 (N.D. Cal. Sept. 11, 2012) ............................................5

*Planet Bingo, LLC v. VKGS LLC*,
    526 Fed. Appx. 1005 (Fed. Cir. 2014) .....................................................................8

*In re Roslin Inst. (Edinburgh)*,
    750 F.3d 1333 (Fed. Cir. 2014)..............................................................................6

*In re TLI Commc'ns Patent Litig.*,
    No. 14-md-02534-TSE, 2015 WL 627858 (E.D. Va. Feb. 6, 2015)........................................8

*Tuxis Techs., LLC v. Amazon.com, Inc.*,
    No. 13-1771-RGA, 2014 WL 4382446 (D. Del. Sept. 3, 2014) .............................................5

*UbiComm, LLC v. Zappos IP, Inc.*,
    No. 13-1029, 2013 WL 6019203 (D. Del. Nov. 13, 2013) ...................................................5

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)............................................1, 2, 5, 14

**Statutes**

35 U.S.C. § 101 ..................................................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12 ......................................................................................1, 4, 5

Defendant The Dreyfus Corporation hereby moves to dismiss this case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim as a result of asserted claims 6 and 25 of U.S. Patent No. 5,513,126[1] covering an abstract idea that is manifestly unpatentable under 35 U.S.C. § 101. Namely, the claims are directed to no more than the timeless concept of distributing information in a manner preferred by a user.

Whether the claims of an asserted patent meet the demands of 35 U.S.C. § 101 is a threshold question "that must be addressed at the outset of litigation." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014) (Mayer, J., concurring); *Bilski v. Kappos*, 561 U.S. 593, 594 (2010). Such determination "bears some of the hallmarks of a jurisdictional inquiry" and is "a bulwark against vexatious infringement suits" and "the most efficient and effective tool for clearing the patent thicket."[2] *Ultramercial*, 772 F.3rd at 718-19 (Mayer, J., concurring).

In *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, the U.S. Supreme Court emphasized that abstract ideas are not patent-eligible under Section 101. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012); *Bilski v. Kappos*, 561 U.S. 593, 601-2 (2010). And the Federal Circuit recently decided that abstract software claims can and should be invalidated under Federal Rule of Civil Procedure 12. *See Ultramercial*, 772 F.3d at 717. The Federal Circuit also recently held

---

[1] The '126 Patent was filed on October 3, 1993 and issued on April 30, 1996, and is coming up on two years since it expired on October 3, 2013.

[2] "The scourge of meritless infringement claims has continued unabated for decades due, in no small measure, to the ease of asserting such claims and the enormous sums required to defend against them. Those who own vague and overbroad business method patents will often file 'nearly identical patent infringement complaints against a plethora of diverse defendants,' and then 'demand . . . a quick settlement at a price far lower than the cost to defend the litigation.' [ ] In many such cases, the patentee will 'place[ ] little at risk when filing suit' whereas the accused infringer will be forced to spend huge sums to comply with broad discovery requests." *Ultramercial*, 772 F.3rd at 718 (citations omitted).

that "the well-known concept of categorical data storage, *i.e.*, the idea of collecting information in classified form, then separating and transmitting that information according to its classification is an abstract idea that is not patent-eligible." *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014).

The patent claims asserted by Loramax here are accordingly invalid because the claims recite nothing more than a process of distributing information based on user preferences. The only physical items the patent claims recite are generic computing elements, such as "electronic workstations," "electronic printers," "a server," and "a client." Both *Alice* and *Ultramercial* underscore that such generic recitation of computers cannot save a claim's patent eligibility. Indeed, the claims here do not differ in any meaningful substance from the claims invalidated by the *Alice* and *Cyberfone* Courts.

In view of the above and for the reasons further discussed below, the Court should find the asserted claims patent ineligible under 35 U.S.C. § 101 and grant this motion.

## I.    BACKGROUND

Loramax, LLC filed suit against Dreyfus alleging infringement of U.S. Patent 5,513,126 (the "'126 Patent"). The '126 Patent is directed to "a method for a sender to automatically *distribute information* to a receiver on a network using devices (such as printers and facsimile machines) and communication channels (such as electronic mail) *defined in a receiver profile*." '126 Patent, col. 4, ll. 39-43 (emphasis added). The '126 Patent allegedly "enable[s] the sender of information on a network to identify the receiver's preferable form of receipt and respond accordingly." *Id.* at col. 4, ll. 4-6. The asserted claims cover this general idea. In other words, the '126 Patent covers the human process of communicating information to a recipient in a manner preferred by the recipient, where that process is implemented in a generic technological

environment.

Asserted independent claim 6 recites:

6. In a network having a plurality of devices including electronic workstations and electronic printers interconnected over a network having a plurality of modes in which data is transmitted, the network being accessible by a plurality of subscribers, each subscriber having a priority listing of modes of data receipt recorded in a communication profile, the method of transmitting data to a subscriber on the network comprising the steps of:

identifying a given subscriber from the plurality of subscribers to receive data over the network, said identifying step accessing the communication profile of the given subscriber,

selecting from the communication profile of the given subscriber a mode in which to transmit data,

automatically specifying predetermined data to be conveyed to the given subscriber over the network channel in the mode of data identified by said selecting step, and

responsive to the identification of the given subscriber and the selection of a mode of data receipt specified by the given subscriber, transmitting the predetermined data in the mode specified by said specifying step to the given subscriber so that data is received in a convenient form.

Asserted independent claim 25 recites:

25. A system for distributing information on a network, comprising:

a server defining a first system element for receiving information;

a client defining a second system element for sending information to said server and disposed remotely from said server on the network, said client communicating with said server using the network;

a communication channel having properties defining a preferred mode of communication between said client and said server; and

a user interface adapted for virtual communication between said client and said server using said communication channel in order that said server receives information in the mode defined by the communication channel.

The computing elements disclosed in claims 6 and 25 are generic and serve no specialized function. The '126 Patent indeed admits that the way these computing elements communicate, and implicitly the elements themselves, is well known. *See, e.g.,* '126 Patent, col. 1, ll. 22-24 ("Protocols defining integrated system behavior for devices such as printers, scanners, workstations and facsimiles, are well known."). Further, Figure 1, reproduced below

and described as "an illustration of a system environment incorporating the present invention" ('126 Patent, col. 4, ll. 64-65), depicts only generic computing elements:



'126 Patent, Fig. 1.

There is nothing particular about the recited computing elements or about the benefits they provide. Absent any specialized or inventive computer components, the words of asserted claims of the '126 Patent simply boil down to the fundamental – and unpatentable – idea of distributing information based on user preferences.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted). "The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmovant." *Clear with Computers, LLC v.*

*Dick's Sporting Goods, Inc.*, No. 6:12-CV-674, 2014 WL 923280, at *2 (E.D. Tex. Jan. 21,

2014) (citation omitted). However, "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). Failure to recite statutory subject matter should "be exposed at the point of

minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 558 (2007) (quotation and citation omitted).

Issues under 35 U.S.C. § 101 are properly considered under Rule 12. *See Ultramercial*,

772 F.3d at 717 (affirming dismissal under Rule 12(b)(6)); *see also OIP Techs., Inc. v.

Amazon.com, Inc.,* -- F.3d --, 2015 WL 3622181, at *4 (Fed. Cir. June 11, 2015) (Mayer, J.

concurring):

> Addressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial
> resources and spares litigants the staggering costs associated with discovery and
> protracted claim construction litigation, it also works to stem the tide of vexatious
> suits brought by the owners of vague and overbroad business method patents.
> Accordingly, where, as here, asserted claims are plainly directed to a patent
> ineligible abstract idea, we have repeatedly sanctioned a district court's decision to
> dispose of them on the pleadings.

Accordingly, the Section 101 inquiry is properly raised on a motion to dismiss under Rule

12(b)(6).[3]

Patent eligibility under Section 101 is a question of law. *In re Roslin Inst. (Edinburgh)*,

---

[3] *See also, e.g., Clear with Computers, LLC v. Altec Inds., Inc.*, No. 6:14-cv-00079, 2015
WL 993392 (E.D. Tex. Mar. 3, 2015) (granting Rule 12(b)(6) motion); *Eclipse IP LLC v.
McKinley Equipment Corp.*, No. SACV 14-742-GW, 2014 WL 4407592 (C.D. Cal. Sept. 4,
2014) (same); *Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 12-1736-LPS-CJB, 2014
WL 4379587 (D. Del. Sept. 3, 2014) (same); *Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13-
1771-RGA, 2014 WL 4382446 (D. Del. Sept. 3, 2014) (same); *UbiComm, LLC v. Zappos IP,
Inc.*, No. 13-1029, 2013 WL 6019203, at *6 (D. Del. Nov. 13, 2013) (same); *Cardpool Inc. v.
Plastic Jungle, Inc.*, No. C. 12-04182, 2013 WL 245026, at *4 (N.D. Cal. Jan. 22, 2013) (same);
*OIP Techs., Inc. v. Amazon.com, Inc.*, No. C-12-1233, 2012 WL 3985118, at *20 (N.D. Cal.
Sept. 11, 2012) (same); *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, No. 6:12-cv-
00674-LED, 2014 WL 923280, at *3-4, *6-7 (E.D. Tex. Jan. 21, 2014) (Davis, J.) (granting Rule
12(c) motion based on § 101 patent ineligibility).

750 F.3d 1333, 1335 (Fed. Cir. 2014). Moreover, invalidity under Section 101 is a "threshold test." *Bilski*, 561 U.S. at 602. The U.S. Supreme Court has stressed that "abstract ideas" may not be removed from the public domain. *See Alice*, 134 S. Ct. at 2354; *Mayo*, 132 S. Ct. at 1293; *Bilski*, 561 U.S. at 601-2. Abstract ideas "are 'part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none.'" *Bilski*, 561 U.S. at 602 (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)).

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.  The U.S. Supreme Court has explained, however, that Section 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, S. Ct. at 2354 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)); *see also Mayo*, 132 S. Ct. at 1293; *Bilski*, 561 U.S. at 601.

The U.S. Supreme Court has set forth a two-part test to determine the patent eligibility of claims under Section 101. *Alice*, 134 S. Ct. at 2355. First, a court determines whether the claims "are directed to a patent-ineligible concept," such as an abstract idea. *Id*. If so, a court proceeds to the second step and must "search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id*. These "additional elements" must be "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 2357. For example, "the well-known concept of categorical data storage, *i.e.*, the idea of collecting information in classified form, then separating and transmitting that information according to its classification is an abstract idea that is not patent-eligible." *Cyberfone*, 558 F. App'x at 992. Moreover, "well-

understood, routine, conventional activity" or technology—including general-purpose computers and computer networks—does not provide an "inventive concept." *Alice*, 134 S. Ct. at 2357-59 (quoting *Mayo*, 132 S. Ct. at 1294). "Thus, if a patent's recitation of a computer amounts to a mere instruction to implement an abstract idea on a computer, that addition cannot impart patent eligibility." *Id.* at 2358. "The greater efficiency with which the computer can perform tasks that a human could perform does not render the inventions patentable." *Kroy IP Holdings, LLC v. Safeway, Inc.,* No. 2:12-cv-800-WCB, 2015 WL 3452469, at *13 (E.D. Tex. May 29, 2015) (Bryson, J.).

Further, claim construction is not required to conduct a Section 101 analysis. *See Dick's Sporting Goods,* 2014 WL 923280 at *3-4 ("Defendants are correct that a *Markman* hearing is not strictly necessary at this point."); *see also Alice*, 134 S. Ct. at 2347 (finding subject matter ineligible without performing claim construction; *Bilski*, 561 U.S. at 611-12 (same); *Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*, No. 2012-1673, 558 F. App'x 988, 991 n.1 (Fed. Cir. Feb. 26, 2014) (non-precedential) ("There is no requirement that the district court engage in claim construction before deciding § 101 eligibility."); *Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

## III.   ARGUMENT

### A.    Distributing Information Based On User Preferences Is An Abstract Idea

The first step under *Alice* is to determine whether the claims of the patent-in-suit are directed to a "patent-ineligible concept" – *i.e.*, an abstract idea. *Alice*, 134 S. Ct. at 2353. "In determining whether an idea in a software patent is abstract, courts must be careful to avoid

allowing the typically convoluted claim language—'patent-ese'—to obfuscate the general

purpose and real essence of software patent claims." *In re TLI Commc'ns Patent Litig.*, No. 14-

md-02534-TSE, 2015 WL 627858, at *6 (E.D. Va. Feb. 6, 2015).

Here, the claims of the '126 Patent recite the abstract idea of distributing information

based on user preferences. The Federal Circuit recently held that the similar, well-known concept

of "categorical data storage, *i.e.*, the idea of collecting information in classified form, then

separating and transmitting that information according to its classification" is an abstract idea.

*Cyberfone,* 558 F. App'x at 992.

The ability for the "sender of information . . . to identify the receiver's preferable form of

receipt and respond accordingly" ('126 Patent, col 4, ll. 4-6) is a basic paradigm of human

activity that has been in existence since humans have been communicating. *See Planet Bingo,*

*LLC v. VKGS LLC*, 526 Fed. Appx. 1005, 1008 (Fed. Cir. 2014) (invalidating claims under § 101

that are directed to an abstract idea "similar to the kind of 'organizing human activity' at issue in

*Alice*.") (quoting *Alice,* 134 S. Ct. at 2356). Examples are plenty. Humans from thousands of

years ago communicated information based on knowing the preferred manner of communication

– *e.g.*, a particular language, whether spoken or in writing – of other humans. More recently in

time, if one knows that their grandmother prefers to receive letters rather than phone calls, one

would write letters to grandma. And even more recently, if one knows that their spouse prefers e-

mail or text messages rather than phone calls during work hours, then e-mails or texts will be

sent.

This timeless process of communicating in a preferred way is the gravamen of the '126

Patent, albeit one set in a general technological environment as claimed in the '126 Patent.

However, "the prohibition against patenting abstract ideas cannot be circumvented by attempting

to limit the use of the idea to a particular technological environment." *Alice,* 134 S. Ct. at 2358

(internal citations and quotations omitted). When the "patent-ese" of each claim is removed,

the '126 Patent claims recite nothing more than the concept of distributing information based on

user preferences. There can be no question that this is an abstract idea that satisfies the first

prong of the *Alice* test.

### B.     No "Inventive Concept" Saves The Claimed Abstract Idea

To escape from being patent ineligible under 35 U.S.C. § 101, the second prong of the

U.S. Supreme Court's *Alice* test requires that a patent claim involve something "significantly

more" than to just describe an abstract idea. *Alice*, 134 S. Ct. at 2355. The claims must contain

an "inventive concept" sufficient to transform the claimed abstract idea into a patent-eligible

invention. *Id*. at 2357. "In order to salvage an otherwise patent-ineligible process, a computer

must be integral to the claimed invention, facilitating the process in a way that a person making

the calculations or computations could not." *Loyalty Conversion Sys. Corp. v. American Airlines,*

*Inc.*, No. 2:13-cv-655, 2014 WL 4364848, at *10 (E.D. Tex. Sep. 3, 2014) (Bryson, J., sitting by

designation) (internal citation and quotation omitted). But a generic computer will not do:

> Given the ubiquity of computers [ ], wholly generic computer implementation is
> not generally the sort of "additional featur[e]" that provides any "practical
> assurance that the process is more than a drafting effort designed to monopolize the
> [abstract idea] itself."

*Alice*, 134 S. Ct. at 2358 (citing *Mayo*, 566 U. S., at 1297 (slip op., at 8–9)).

Here, the asserted claims of the '126 Patent recite generic computing elements, such as

"electronic workstations," "electronic printers," "a network," "a server," and "a client," none of

which advance an inventive concept. *See, e.g.*, '126 Patent, claims 6, 25. The U.S. Supreme

Court explained that the introduction of a general-purpose computer into patent claims does not

transform an abstract idea into a patent-eligible invention. *Alice*, 134 S. Ct. at 2357-58. The

Court explained that "the relevant question is whether the claims here do more than simply instruct the practitioner to implement the abstract idea . . . on a generic computer." *Id*. at 2359. Like the claims in *Alice*, the function performed by the computing elements at each step of the '126 Patent claims is "purely conventional," and the claims merely require "a generic computer to perform generic computer functions." *Id*. That the asserted claims computerize the abstract idea of distributing information based on user preferences cannot and do not create a patent-eligible invention. *See Loyalty Conversion,* 2014 WL 4364848 at *7 (invalidating claims under § 101 that "are mainly functional in nature, and nothing in the claims or the specification reveals how any of the functions are performed or suggests why any of those functions are not within the routine capacity of a generic computer with conventional programming.").

As seen in the preamble of asserted claim 6, only generic computing elements are recited to carry out the process recited in the claim:

> 6. In a ***network*** having a plurality of ***devices*** including ***electronic workstations*** and ***electronic printers*** interconnected over a ***network*** having a plurality of modes in which data is transmitted, the ***network*** being accessible by a plurality of subscribers, each subscriber having a priority listing of modes of data receipt recorded in a communication profile, the method of transmitting data to a subscriber on the ***network*** comprising the steps of:

'126 Patent, claim 6 (emphasis added). The computing elements emphasized above are well-known, purely conventional, and merely provide a general technological environment in which to apply the abstract idea discussed above. *See, e.g.*, '126 Patent, col. 1, ll. 8-10 ("The present invention relates to a method and apparatus for ***improving communication*** between devices or stations ***on a network***.") (emphasis added); *see also id.* at col. 1, ll. 22-24 ("Protocols defining integrated system behavior for devices such as ***printers***, scanners, ***workstations*** and facsimiles, ***are well known***.") (emphasis added).

The first two elements of claim 6 are drawn to actions that require no computer at all:

> ***identifying a given subscriber*** from the plurality of subscribers to receive data over the network, said identifying step accessing the communication profile of the given subscriber,
>
> ***selecting*** from the communication profile of the given subscriber ***a mode in which to transmit data***,

'126 Patent, claim 6 (emphasis added). Further, the "communication profile" recited in the claim is not inventive: "[t]he receiver profile establishes the properties and mode for receipt of information for receivers . . . ." *Id.* at col. 4, ll. 44-45. In other words, the "communication profile" is akin to knowing to communicate with someone in English instead of some other language. Importantly, the steps of "identifying a given subscriber" and "selecting . . . a mode in which to transmit data" are performed by human action alone. The specification of the '126 Patent describes how a given subscriber is identified (self-identified) and how a mode in which to transmit data is selected (manually):

> Publication to other network users defines the preferred form with which the publisher, namely Fred Smith, desires his information to be received. Profile properties 153 are a number of different profile categories, each category can be either checked, locked, or unselected. If a category is unselected, then a category is neither locked nor checked. A checked category such as fax category box 155 identifies facsimile as the users established default receive preference. For example, given ***Fred Smith checked the fax box***, then all facsimile documents sent to him are routed to the fax at the identified phone number in the profile properties 153.

'126 Patent, col. 8, ll. 36-47 (emphasis added). Thus, the first two elements of asserted claim 6 fail to provide an inventive concept that transforms the abstract idea of distributing information based on user preferences into a patent-eligible invention.

The remaining elements of claim 6 are drawn to actions that do not require any specialized functionality of the generic computing elements:

> ***automatically specifying predetermined data to be conveyed*** to the given subscriber over the network channel in the mode of data identified by said selecting step, and
>
> responsive to the identification of the given subscriber and the selection of a mode of data receipt specified by the given subscriber, ***transmitting the***

11

> ***predetermined data in the mode specified*** by said specifying step to the given
> subscriber so that data is received in a convenient form.

'126 Patent, claim 6 (emphasis added). The "automatically specifying" step is merely the action

of specifying that information is to be communicated in a manner provided in the communication

profile – this step as recited evidences no more than the use of a generic computer. Finally, as

described in the Fred Smith example above, the predetermined data is transmitted in the

traditional manner used for each mode. *See* '126 Patent, col. 8, ll. 44-47 ("For example, given

Fred Smith checked the fax box, then all facsimile documents sent to him are routed to the fax at

the identified phone number in the profile properties 153."). Such a transmission step entails no

specialized or inventive components.

In sum, the claimed method is the mere movement of data based on preferences, and

"[d]ata in its ethereal, non-physical form is simply information that does not fall under any of the

categories of eligible subject matter under section 101." *Digitech Image Techs., LLC v. Elecs. for

Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014). "That a computer receives and sends the

information over a network—with no further specification—is not even arguably inventive."

*buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014); *see also Content

Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir.

2014) ("The concept of data collection, recognition, and storage is undisputedly well-known.

Indeed, humans have always performed these functions."); *see also OIP Techs.,* -- F.3d --, 2015

WL 3622181 at *3 (affirming patent ineligibility of claims drawn to "conventional computer

activities or routine data-gathering steps").

All of the above steps could be performed by a human while, for example, applying for a

job (corresponding claimed step in brackets):

(1) select a company from a list of companies advertising job openings [identify a

given subscriber],

(2) determine the best way to send a resume to the company – *e.g.,* e-mail, fax, mail, online submission, in-person delivery [select a mode in which to transmit data],

(3) choose the resume to provide in the manner determined in (2) [specify predetermined data to be conveyed], and

(4) provide the resume in the requested manner [transmit the predetermined data in a convenient form].

While this process may be carried out by a generic computer, such an implementation does not create patentable subject matter. *See OIP Techs.,* -- F.3d --, 2015 WL 3622181 at *3 ("But relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible.").

Therefore, nothing in asserted claim 6 comes close to adding "significantly more" to the abstract idea of distributing information based on user preferences and thus should be rendered invalid under Section 101. *Alice*, 134 S. Ct. at 2355.

Asserted claim 25 suffers the same fate. It too only recites generic computing elements:

25. A system for distributing information on a ***network***, comprising:
    a ***server*** defining a first system element for receiving information;
    a ***client*** defining a second system element for sending information to said ***server*** and disposed remotely from said ***server*** on the ***network***, said ***client*** communicating with said ***server*** using the ***network***;
    a communication channel having properties defining a preferred mode of communication between said ***client*** and said ***server***; and
    a user interface adapted for virtual communication between said ***client*** and said ***server*** using said communication channel in order that said ***server*** receives information in the mode defined by the communication channel.

'126 Patent, claim 25 (emphasis added). Like those in claim 6, the computing elements emphasized in claim 25 are "purely conventional." *Alice*, 134 S. Ct. at 2359. For example, the "server" and "client" elements are described in claim 25 as performing their typical tasks, *i.e.,* receiving and sending information, respectively, on a network. *See, e.g.*, '126 Patent, col. 7, l. 65

– col. 8, l. 1 ("The channel architecture is based on a client-server relationship, where client facilities are applications that are exported to the network 24, and server facilities are imported from the network.").

Similarly, "network" is a term in the ether – the term as nakedly recited is an abstraction that does not impose any meaningful limits on the scope of the claims. *CyberSource Corp. v. Retail Decisions, Inc.*, 620 F.Supp.2d 1068, 1077 (N.D.Cal. 2009). As the Federal Circuit has recently stated:

> The claims of the '545 patent, however, are not tied to any particular novel machine or apparatus, only a general purpose computer. As we have previously held, the Internet is not sufficient to save the patent under the machine prong of the machine-or-transformation test. [ ] It is a ubiquitous information-transmitting medium, not a novel machine. And adding a computer to otherwise conventional steps does not make an invention patent-eligible. Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis.

*Ultramercial*, 772 F.3d at 716-17.

"Communication channels" suffers for the same reasons – the specification of the '126 Patent describes "communication channels" as being just various methods of standard communication. *Id*. at 717 ("transfer of content between computers is merely what computers do and does not change the analysis"); *see* '126 Patent, col. 4, ll. 39-43 ("The present invention is a method for a sender to automatically distribute information to a receiver on a network using devices (such as printers and facsimile machines) and ***communication channels*** (such as electronic mail) defined in a receiver profile.") (emphasis added); col. 10, l. 66 – col. 11, l. 2 ("In the example shown in FIG. 11, Jane Roe's ***communication channel*** allows the sender of information to select a document's disposition from either fax, page printer, color printer, or electronic mail.") (emphasis added); col. 12, ll. 2-4 ("***Communication channels*** enable the recipients of documents in a network multimedia environment to define the form with which the

document should take upon receipt.") (emphasis added).

As another example, the '126 Patent describes the claimed "user interface" as a well-known way to represent various data objects and user applications:

> Workstation 4 includes an object oriented *user interface* (UI) 40 *that uses icons and windows to represent various data objects and user applications* such as a display illustrating an office desktop metaphor employing various abstractions of a typical office environment. *User interfaces using windows and icons* having an object oriented methodology to present metaphors for maintaining data, navigating through various user spaces and presenting abstract computer concepts *are well known*, an example of which is Globalview TM ("GV") software available from Xerox Corporation, which uses abstractions such as a desktop, inbasket, outbasket and documents.

'126 Patent, col. 6, ll. 37-48 (emphasis added). A user interface, even if customized, is a "generic computer component" without specifically described inventive underlying functionality. *See Affinity Labs of Texas, LLC v. Amazon.com, Inc.,* No. 6:15-cv-0029-WSS-JCM, 2015 WL 3757497, at *11 (W.D. Tex. June 12, 2015) (citations omitted) (emphasis added):

> In the instant case, the claim limitations of Affinity's '085 Patent, specifically *the customized user interface, do not identify any specific functionality* or explain 'how' this customization is to be achieved. On its face, claim 14 merely enables the device to present a 'graphical user interface for the network based media managing system.' The claim is devoid of any specific technology or instructions that explain how the device can do what it purports to do or direct the practitioner how to carry out the claims. *This is a generic computer component that does not contain an inventive concept*.

Thus, like asserted claim 6, asserted claim 25 fails to recite anything "significantly more" than the abstract idea of distributing information based on user preferences. *Alice*, 134 S. Ct. at 2355.

Because they fail to claim eligible subject matter under the Supreme Court's *Alice* test, asserted claims 6 and 25 of the '126 Patent fail to claim eligible subject matter and are invalid under Section 101.

**IV.      CONCLUSION**

In view of the above, Dreyfus respectfully requests the Court dismiss with prejudice

Loramax's suit because the asserted claims of the '126 Patent are invalid under 35 U.S.C. § 101.

Dated:  July 20, 2015

Respectfully submitted,

**FISH & RICHARDSON P.C.**

By:  */s/Wasif Qureshi*
    Neil J. McNabnay
    mcnabnay@fr.com
    Texas Bar No. 24002583
    1717 Main Street, Suite 5000
    Dallas, TX  75201
    (214) 747-5070 – Telephone
    (214) 747-2091 – Facsimile

    Wasif Qureshi
    qureshi@fr.com
    Texas Bar No. 24048155
    Tony Nguyen
    tnguyen@fr.com
    Texas Bar No. 24083565
    1221 McKinney Street, Suite 2800
    Houston, TX 77010
    (713) 654-5300 – Telephone
    (713) 652-0109 – Facsimile

**COUNSEL FOR THE DREYFUS CORPORATION**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document will be served on July 20, 2015 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/Wasif Qureshi*
Wasif Qureshi