THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Loramax LLC, *Plaintiff*,<br><br>v.<br><br>American Century Proprietary Holdings Inc., *Defendant*. | Civil Action No.  2:15-cv-00649-RWS-RSP |
| BlackRock, Inc., *Defendant*. | Civil Action No. 2:15-cv-00657-RWS-RSP |
| Colonial Life & Accident Insurance Company, *Defendant*. | Civil Action No. 2:15-cv-00658-RWS-RSP |
| Dodge & Cox and Dodge & Cox Funds, *Defendants*. | Civil Action No. 2:15-cv-00664-RWS-RSP |
| Invesco Ltd. and Invesco Distributors, Inc., *Defendants*. | Civil Action No. 2:15-cv-00667-RWS-RSP |
| Jackson National Life Insurance Company, *Defendant*. | Civil Action No. 2:15-cv-00668-RWS-RSP |
| Lincoln National Corporation, *Defendant*. | Civil Action No. 2:15-cv-00669-RWS-RSP |
| Lord Abbett Distributor LLC, *Defendant*. | Civil Action No. 2:15-cv-00670-RWS-RSP |
| Massachusetts Mutual Life Insurance Company, *Defendant*. | Civil Action No. 2:15-cv-00671-RWS-RSP |
| MFS Fund Distributors, Inc., *Defendant*. | Civil Action No. 2:15-cv-00673-RWS-RSP |
| Janus Capital Group Inc. and Janus Int'l Holding LLC, *Defendants*. | Civil Action No. 2:15-cv-00674-RWS-RSP |
| New York Life Insurance Company, *Defendant*. | Civil Action No. 2:15-cv-00676-RWS-RSP |
| The Dreyfus Corporation, *Defendant*. | Civil Action No. 2:15-cv-00677-RWS-RSP |
| Eaton Vance Corp., *Defendant*. | Civil Action No. 2:15-cv-00678-RWS-RSP |

| | |
|---|---|
| Legg Mason Investor Services, LLC,<br>    *Defendant* | Civil Action No. 2:15-cv-00679-RWS-RSP |
| Oppenheimer Funds Distributor, Inc.,<br>    *Defendant*. | Civil Action No. 2:15-cv-00680-RWS-RSP |

**PLAINTIFF LORAMAX LLC'S RESPONSE TO DEFENDANTS'
<u>RENEWED MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................ 1

II.    BACKGROUND .................................................................................. 6

III.   LAW ..................................................................................................... 8
    A.  Motion to Dismiss under Rule 12 .................................................... 8
    B.  Patent Eligibility Under 35 U.S.C. § 101 ..................................... 10
    C.  Presumption of Validity Applies to § 101 and Patent Ineligibility Must be Proven by Clear and Convincing Evidence. ........................................................... 12

IV.   ARGUMENT ..................................................................................... 12
    A.  Defendants' Motions Must Be Denied Because Claim Construction is Necessary and Fact Issues Exist That Cannot Be Resolved Under Rule 12 ...................................... 12
        1.  Defendants' motions are premature because they inherently rely on claim construction of technical terms ........................................................... 12
        2.  Defendants' motions must fail because they are premised on facts in direct conflict with Loramax's First Amended Complaint ........................................ 17
    B.  Defendants' Motions Only Address Portions of Two Claims and Fail to Consider Any Claim from the Perspective of a PHOSITA; They are Therefore Deficient on Their Face ................................................................................ 19
    C.  Defendants Fail to Clearly and Convincingly Demonstrate That Any of the Claims are Invalid Under § 101 ......................................................................... 20
        1.  Defendants' motion sans expert testimony fails to appreciate the invention of the '126 patent and leaves out the heart of the claimed invention which is not an abstract idea .................................................................................. 20
        2.  Defendants fail to meet their burden for the second step because the limitations of the claim ensure that the claims amount to significantly more that the purported abstract idea ........................................................................... 24
        3.  Other indicia that the claims are patent eligible .................................... <span style="color:red">29</span><s>28</s>
    D.  Defendants' § 101 Defense is Barred by 35 U.S.C. § 282(b), Which Only Permits Defenses "Specified in Part II as a Condition for Patentability" ............................ 30

V.    CONCLUSION ............................................................................... <span style="color:red">31</span><s>30</s>

# TABLE OF AUTHORITIES

## CASES

*Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013)............... 18

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. __, 134 S.Ct. 2347 (2014)...................... passim

*Ameranth, Inc. v. Genesis Gaming Solutions, Inc.*, No. SACV 11-00189 AG, 2014 WL 7012391
(C.D. Cal. Nov. 12, 2014).............................................................................................. 25

*Ass'n for Molecular Pathology v. USPTO*, 702 F.Supp.2d 181 (S.D.N.Y. 2010)....................... 13

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266 (Fed. Cir. 2012) . 13, 15,
27

*Bilski v. Kappos*, 130 S. Ct. 1328 (2010)............................................................................. passim

*Cal. Inst. of Tech. v. Hughes Communs., Inc.*, No. 2:13-cv-07245-MRP-JEM, 2014 U.S. Dist.
LEXIS 156763 (C.D. Cal. Nov. 3, 2014)............................................................... 24, 25, 28, 29

*Card Verification Solutions, Inc. v. Citigroup*, No. 13-C-6339, 2014 U.S. Dist. LEXIS 137577
(N.D. Ill. Sept. 29, 2014) ...................................................................................... 12, 28

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.,* 717 F.3d 1269 (Fed. Cir. 2013)....................... 12, 28, 30

*Content Guard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-cv-1112-JRG, 2015 WL 1289321
(E.D. Tex. Arp. 8, 2015) ............................................................................................... 13

*Data Distrib. Techs., LLC v. BRER Affiliates, Inc.*, No. 12-cv-4878 (JBS/KMW), 2014 WL
4162765 (D.N.J. Aug. 19, 2014)................................................................................ 14, 16

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) ................................. 27

*Deston Therapeutics LLC v. Trigen Labs., Inc.*, 723 F. Supp. 2d 665 (D. Del. 2010) ................. 14

*DietGoal Innovations LLC v. Tyson Foods, Inc.*, No. 2:12-CV-338- JRG-RSP, 2013 U.S. Dist.
LEXIS 189004 (E.D. Tex. Mar. 25, 2013) ................................................................... 14

*Eclipse IP LLC v. McKinley Equip. Corp.*, No. CV 14-154-GW AJWX, 2014 WL 4407592 (C.D.
Cal. Sept. 4, 2014)....................................................................................................... 25

*France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-cv-4967-WHO, 2014 U.S. Dist.
LEXIS 52564 (N.D. Cal. Apr. 14, 2014)................................................................... 20

*Freeny v. Murphy Oil Corp.*, No. 2:13-CV-791-RSP, Dkt. No. 143 (E.D. Tex. May 22, 2015) . 12

*Graham v. John Deere Co.*, 383 U.S. 1 (1966) ................................................................... 30

*Helios Software, LLC v. Spectorsoft Corp.*, No. 12-cv-081-LPS, 2014 U.S. Dist. LEXIS 135379
(D. Del. Sept. 18, 2014) .......................................................................................... 22

*In re Abele*, 684 F.2d 902 (C.C.P.A. 1982) ....................................................................... 30

*In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994) ............................................................... 28, 30

*In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008).......................................................................... 13

*In re Chinese Manufactured Drywall Prods. Liab. Lit.*, 759 F. Supp. 2d 822 (E.D. La. 2010) ... 10

*In re Katrina Canal Breaches Litigation*, 495 F.3d 191 (5th Cir. 2007)......................................... 9

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010) ................... 9

*MacroSolve, Inc. v. GEICO Ins. Agency, Inc.*, No. 6:12-cv-74-MHS-JDL, 2013 U.S. Dist. LEXIS
189003 (E.D. Tex. Feb. 5, 2013) ............................................................................... 14, 16

*Microsoft Corp. v. i4i Ltd P'ship*, 131 S. Ct. 2238 (2011)......................................................... 12

*My Health, Inc. v. Lifescan, Inc.*, No. 2:14-cv-683-RWS-RSP, Dkt. No. 34 (E.D. Tex. Mar. 19,
2015).............................................................................................................. 9, 10, 13, 21

*Nazomi Comm., Inc. v. Arm Holdings, PLC*, 403 F.3d 1364 (Fed. Cir. 2005) ............................. 17

*PNC Bank v. Secure Axcess, LLC*, No. CBM2014-00100, 2014 WL 4537440 (Patent Tr. & App.
Bd. Sept. 9, 2014) ................................................................................................... 20, 21

*Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, 2010 U.S. Dist. LEXIS 120225 (N.D. Ohio Nov. 12, 2010) ........................................................................................................................................ 14
*Prompt Med. Sys., L.P. v. AllscriptsMysis Healthcare Solutions, Inc.*, No. 6:10-cv-71, 2012 U.S. Dist. LEXIS 30694 (E.D. Tex. Feb. 13, 2012) ........................................................................ 29
*Ramming v. US*, 281 F.3d 158 (5th Cir. 2001) ............................................................................. 9
*Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir. 2010) ................................. 29
*Rockstar Consortium US LP, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:13-cv-894-JRG, 2014 U.S. Dist. LEXIS 67097 (E.D. Tex. May 15, 2014) .............................................................. 13, 23
*Sandborn v. Avid Tech., Inc.*, No. CIV.A. 11-11472-FDS, 2013 WL 4784265 (D. Mass. Sept. 5, 2013) ...................................................................................................................................... 14
*SanDisk Corp. v. Memorex Prods., Inc.*, 415 F3d 1278 (Fed. Cir. 2005) ................................... 15
*SiRF Tech., Inc. v. ITC*, 601 F.3d 1319 (Fed. Cir. 2010) ............................................................ 29
*TQP Dev., LLC v. Intuit Inc.*, No. 2:12-cv-180-WCB, 2014 U.S. Dist. LEXIS 20077 (E.D. Tex. Feb. 19, 2014) ............................................................................................................ 28
*U.S. Bancorp v. Solutran, Inc.*, No. CBM2014-00076, 2014 WL 3943913 (Patent Tr. & App. Bd. Aug. 7, 2014) ..................................................................................................... 20, 21, 23
*Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335 (Fed. Cir. 2013) ("*Ultramercial I*") ........... 13, 17
*Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA LLC*, No. 13 C 4417, 2014 WL 983123 (N.D. Ill. Mar. 13, 2014) ........................................................................................... 14
*W.L. Gore & Associates Inc. v. Garlock Inc.*, 842 F.2d 1275 (Fed. Cir. 1988) ........................... 14
*WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014) ............................................... 13

## STATUTES

35 U.S.C. § 101 ............................................................................................................................. 10
35 U.S.C. § 112 ............................................................................................................................. 28
35 U.S.C. § 282 ................................................................................................................... 12, 30, 31
35 U.S.C. Part II, §§ 100-212 ...................................................................................................... 30

## RULES

37 C.F.R. § 74622-24 .................................................................................................................... 11
Fed. R. Civ. P. 12 ........................................................................................................................... 8
Fed. R. Civ. P. 8 ............................................................................................................................. 9
P.R. 1-2 ........................................................................................................................................ 17
P.R. 4-1 to 4-6 .............................................................................................................................. 17

Plaintiff Loramax LLC ("**Plaintiff**" or "**Loramax**") files this Response in opposition to the above captioned Defendants' (collectively, "**Defendants**") Renewed Motions to Dismiss for Failure to State a Claim (each filed on August 31, 2015 in their respective cases) (e.g., Dkt. No. 22 ((*hereinafter* "**Defs' Mt.**")).[1]

## I.  INTRODUCTION

Loramax acquired the asserted U.S. Patent No. 5,513,126 ("**the '126 patent**") from the famous technology firm, Xerox Corporation.  (*See* First Amend. Compl., Dkt. No. 16, ¶ 6 and Ex. A (*hereinafter* "**FAC**").)  The '126 patent is a technical patent; it contains a technical disclosure that includes pseudo-code; and a person having ordinary skill in the art (a "**PHOSITA**") would have a technical degree and/or technical work experience.  (FAC, ¶¶ 8, 10, and 12.)  Defendants seek to invalidate this technical patent without a single finding of fact or any evidentiary showing on the record.

Under Rule 12, the only evidence the court can consider is the complaint and the patent and all the evidence must be viewed in a light most favorable to the plaintiff.  Loramax's First Amended Complaint, which includes the '126 patent, indisputably establishes the following facts.  The '126 patent, and its claims, generally relate to a computerized system that implement technical functionality that enable the automatic distribution of information to recipients in a preferred form.  That is, the claims are direct at a computerized system that allows the recipient to designate a preferred form of communication in a communication profile, which is then accessed by a specialized computer when a sender sends information to the recipient.  A preferred embodiment of this specialized, computerized system is shown in FIG. 3 of the '126

---

[1] All Defendants' are represent by the same counsel, Fish & Richardson, and relevant papers in Defendants' cases are substantially similar.  Accordingly, Loramax files a single response to all of Defendants' motions.  Unless expressly stated otherwise, all citations to a docket number appearing in this response refer to the *American Century* case (15-cv-665) and are intended to be exemplary for all Defendants.

patent (reproduced below).  The claims do not preempt any abstract idea but are narrowly tailored to computerized systems that, among other things, implement a "communication profile" to enable recipients to designate a preferred form of communication and senders to access such and transmit data in the preferred form.  Such computerized systems are neither conventional, nor generic.  The claims here pass the machine-or-transformation test because they are directed to specialized machines, or computerized systems, that deliver documents in accordance with a communication profile—and such machines transform data.  The claims are a technical improvement over existing document delivery-systems, which did not provide a communication profile and did not permit recipients to designate a preferred mode of communication.  The claims, as properly construed, cannot be practiced by human interaction alone or "grandma."

Defendants' Rule 12 motions are fantasy.  Defendants cannot contest Loramax's characterization of the claims because all evidence, including the '126 patent, <u>must</u> be read in a light most favorable to Loramax.  As explained in this brief, the claims here are not an abstract idea even under a neutral reading of the '126 patent—and most definitely not when read in a light most favorable to Loramax.

Defendants' renewed motions are predominately a cut and paste of their original motions (Dkt. No. 11) filed prior to the filing of Loramax's First Amended Complaints.  So much so that Defendants did not even bother to address a single fact added in Loramax's First Amended Complaint.  (*See* FAC, ¶¶ 7-15.)  Those facts directly addressed purported issues Defendants attempted to raise in their original § 101 motions.  Defendants' decision to simply ignore Loramax's First Amended Complaint and copy the same deficiencies from their original motions, rather than adapt and respond, demonstrates that their motion is incurably without

merit—form without conviction.[2]

As with most copies, Defendants' copied motions are worse than the original.  To compensate for their legal and factual deficiencies, Defendants repeatedly mislead the Court by citing to C.J. Mayer's concurring opinion in *Ultramercial* (starting at p. 717) and attempt to pass it off as Federal Circuit precedent.[3]  The concurrence is clearly not the opinion of the Federal Circuit and is not entitled to weight as binding precedent.  As persuasive authority, it is entitled to very little to no weight given that it was rejected by at least the two other judges on the *Ultramercial* panel, C.J. Lourie and C.J. O'Malley, who did not sign onto the concurring opinion.

Defendants further mislead by failing to candidly inform the Court of their "true" belief as to the scope of the claims here.  On one hand, they assert the claims are broad enough to "preempt the entire filed of user-preferred communications."  (Defs' Mt. at 11.)  On the other hand, they argue they do not infringe such a broad claim and expressly reserve their right to contest infringement and submit (presumably) narrowing claim constructions.[4]  It is black letter law that claims are construed the same for invalidity as infringement.  Defendants attempt to *game the system* here by arguing for different claim scopes for invalidity and infringement.

Defendants' motions are further laced with inherent claim construction positions and factual positions that put into dispute allegations in Loramax's complaint in contravention of

---

[2] Defendants' handling of the § 101 issue should also preclude them from attempting to rebut any allegation in the First Amended Complaint for the first time on reply.

[3] For example, Defendants falsely state that the concurring opinion is Federal Circuit precedent: "the Federal Circuit recently decided that abstract software claims can and should be held ineligible under Federal Rule of Civil Procedure 12.  *See Ultramercial*, 772 F.3d at 717." (Defs' Mt. at 2.)   And "[w]hile an issued patent enjoys a presumption of validity, there is no presumption of patent eligibility under 35 U.S.C. § 101 . . . .  *Ultramercial*, 772 F.3rd at 720-21." (*Id.* at 7.)

[4] Hare Decl., Ex. A (Defendants expressly informing Loramax that they do not waive claim construction issues with respect to invalidity or infringement, and they further refused to confirm that the claims preempt the accused instrumentalities here).

Rule 12.  Defendants do not even attempt to acknowledge this.  For example, Defendants assert that the claims can be "performed by a human" or "generic" components, while the complaint alleges the exact opposite.  (*Compare* Defs' Mt. at 15 *with* FAC, ¶ 14.)  Clearly there are disputes of fact and claim construction.  This alone dooms Defendants' Rule 12 motions.

The root cause of Defendants' many problems is their fundamentally flawed, lay understanding of this technical patent.  Defendants' characterization of the invention as only being directed to "distributing information in a manner preferred by a user" leaves out the heart of the invention.  That is, it leaves out that the invention is about a computerized system that allows a recipient to designate a preferred form of communication in a communication profile that is accessible to the sender.  And, the claims are directed to a technical implementation of that non-abstract idea, e.g., using specially programmed databases and servers.  (*See* FIG. 3 (reproduced below).)  It is pure fiction that the claims are directed to grandma calling grandson and telling him to send her letters as Defendants assert.

Putting aside the above deficiencies, Defendants seek to invalidate the duly issued claims of the '126 patent without a single finding of fact or any evidentiary showing on the record. They ask this Court to invalidate the claims of the '126 patent before Loramax has even identified its asserted claims, before the Court has construed any terms, and in the absence of any factual record.  Defendants make this preposterous request based on their characterization of portions of only two claims, which they assert are invalid without any analysis or evidence. They present no evidence that the purported abstract idea is a fundamental, long-standing concept, or that each asserted claim would preempt the use of the purported abstract idea.  They fail to analyze the limitations of each claim as an ordered combination.  In sum, they would have

this Court believe that every patent in history is invalid.[5]

Defendants' motions lack the rigorous analysis of every single claim, and of each claim  limitation individually and as an ordered combination, which is required to invalidate a claim under §101.  Indeed, Defendants fail to even acknowledge the heavy burden they bear on their motions.  Nowhere do they reference the clear and convincing standard but instead falsely assert that it does not apply here.  Defendants' burden on a motion to dismiss is even higher: all facts and reasonable inferences must be drawn in Loramax's favor, and Defendants' motion cannot be granted absent a showing (by clear and convincing evidence) that the only plausible reading of each asserted claim renders all claims ineligible under § 101.

Invalidation of a patent requires much more than Defendants have offered.  The twenty plus years of investment made by Xerox to patent inventions borne from decades of experience with document-organization technologies, its disclosure of this invention to the public, and to the repeated scrutiny on grounds of eligibility, novelty, nonobviousness, written description, and enablement by examiners at the U.S. Patent Office, the time and resources spent to overcome and distinguish prior art references during prosecution, and payment of fees to the Patent Office, all demands a far greater showing than made by Defendants.  Defendants' motions, however, fall far short of overcoming the statutory presumption of validity.

In sum, the '126 patent does not look, swim, or quack like the business-method patents of *Alice* or *Bilski*.  That is because it is a technical-implementation patent—that provides a

---

[5] Defendants' conclusory argument structure can be applied to virtually any patent.  For example under Defendants' analysis, a patent to a pioneering drug that cures cancer is ineligible, because it is directed to the timeless concept of curing disease, and the claims recite nothing more because they only apply the idea using conventional compounds. Similarly, Eli Whitney's famous patent for the cotton gin would be ineligible because it is directed to the timeless concept of ginning cotton (i.e., removing the seed from the cotton ball) using conventional cylinders, cleaners, and hoppers.  *See* U.S. Pat. No. X72 (attached to Hare. Decl. as Ex. I). The Supreme Court cautioned against this fallacy. *See Alice*, 134 S. Ct. at 2354 (acknowledging all inventions involve abstract ideas and stating a patent is not ineligible simply because it involves an abstract concept, lest the exception "swallow all of patent law").

technical solution to a concrete real-world problem faced by businesses.   Accordingly, Defendants' motions should be denied.

## II.   <u>BACKGROUND</u>

*Loramax*.   Loramax brought this lawsuit against Defendants alleging that Defendants' website and related system infringe the '126 patent.   (*See* FAC, ¶ 19.)   Loramax is limited liability company based in the Eastern Texas and was formed by a longtime resident of Eastern Texas.   Loramax is in the business of acquiring and licensing patents, including the '126 patent.   Loramax is the owner by assignment of the '126 patent via Xerox Corporation.   (*Id.*, Ex. A.)

On October 4, 1993, Larry E. Harkins, Ken Hayward, Thomas J. Herceg, Jonathan D. Levine, and David M. Parsons filed a patent application that resulted in the '126 patent.   (FAC, ¶ 7.)   The application was duly vetted by patent examiners, Emanuel T. Voeltz and Kyle J. Choi, including vetting the application for compliance with 35 U.S.C. § 101 (*hereinafter* "**§ 101**").   (*Id.*)   After the PTO completed its vetting, the PTO found that the application complied with all requirements for a United States patent and duly issued the '126 patent on April 30, 1996.   (*Id.*)

The PTO classified the '126 patent in international class H04L 12/28 and U.S. class 364/514A.   (*Id.*, ¶ 8.)   These classes are for inventions related to the transmission of digital information and networking technologies.   (*Id.*)   Neither international class H04L 12/28 nor U.S. class 364/514A are related to business methods.   (*Id.*)

The '126 patent is a technical patent and its specification contains technical information including pseudo-code.   (*Id.*, ¶ 10.)   Accordingly, a PHOSITA in the technology of  the '126 patent would have a bachelor's degree in computer science, computer engineering or equivalent work experience, and at least four years of experience in computer systems and applications design and development.   (*Id.*)

The '126 patent, as understood by a PHOSITA, generally relate to computerized methods

and systems that implement technical functionality that enable the automatic distribution of information to recipients in a preferred form. (*Id.*) The PHOSITA would understand that the claims of the '126 patent require the use of a specially programmed computer(s) implementing the invention patented in the '126 patent. (*Id.*) For example, the PHOSITA would generally understand that practicing the '126 patent requires a communication profile that specifies a mode for transmission of data to a recipient. (*Id.*) Communication profiles would be stored in a specially programmed repository (e.g., database). (*Id.*) Specialized software would be required to interface with the repository. (*Id.*) The specialized software would access the repository when a document is sent to a recipient, which would then cause the transmission of the document to the recipient using a communications channel in accordance with the recipient's communication profile. (*Id.*) A preferred embodiment of such specially programmed computer(s) is shown in FIG. 3 of the '126 patent:



None of the above components, and as claimed, singularly or as an ordered combination are conventional or generic. (*See id.*, ¶¶ 7 and 13.) Further, the PHOSITA would understand the claims of the '126 patent are directed to various aspects of the above shown preferred embodiment. (*See id.*, ¶¶ 12-13.) Further, a PHOSITA would understand that the claims of the '126 patent could not be practiced by human interaction alone, nor merely using a generic

computer.  (*Id.*, ¶ 14.)   A generic computer does not provide functionality that enables the automatic distribution of information to recipients in a preferred form.   (*Id.*)   Finally, the PHOSITA would understand that there are alternate ways of distributing information based on user preferences that are not covered by the claims of the '126 patent.  (*Id.*, ¶ 15.)

*Meet and Confer regarding § 101 Issues*.   On September 18, 2015, to avoid the need for early discovery, Loramax requested that Defendants confirm their positions with respect to various issues raised in their § 101 motions.   (Hare Decl., Ex. A.)   For example, Loramax requested that Defendants confirm that it was their position that: a PHOSITA would have at least some technical training or experience; there were no issues of claim construction for validity or infringement;   the claims cover "the entire field of user-preferred communications" and Defendants' systems performed "user-preferred communications"; and Defendants had waived their right to raise claim construction issues and contest infringement.  (*Id.*)   On September 27, Defendants refused to confirm any of those positions and expressly reserved there right to contest infringement and raise claim construction issues.  (*Id.*)

## III.   LAW

### A.   Motion to Dismiss under Rule 12

A § 101 motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is only warranted in "narrow" circumstances and such motions are "the exception, not the rule." *My Health, Inc. v. Lifescan, Inc.*, No. 2:14-cv-683-RWS-RSP, Dkt. No. 34, at 2-3 (E. D. Tex. Mar. 19, 2015).[6]   This is because, to defeat a motion to dismiss under Rule 12(b)(6), a complaint

---

[6] Judge Payne reasoned (emphasis added):

> Under certain circumstances, a determination of patent validity under § 101 may be made at the pleading stage on a motion to dismiss.   *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 at 717 (Fed. Cir. 2014). However, while the issue of patentable subject matter presents a question of law, the legal analysis can – and often does – "contain underlying factual issues."

merely needs to state "[a] short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  A court must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff" when deciding a motion under Rule 12(b)(6).  *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, <u>not to evaluate the plaintiff's likelihood of success</u>."  *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009)) (emphasis added).

The court may only consider "the complaint, any documents attached to the complaint" and cannot consider extrinsic evidence.  *Id*.  "In other words, a motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts."  *Ramming v. US*, 281 F.3d 158, 162 (5th Cir. 2001) (quotations and citations omitted).  "The moving party bears the burden of showing that plaintiff can prove no set of facts consistent with the allegations in the complaint which would entitle it to relief."  *In re Chinese Manufactured Drywall Prods. Liab. Lit.*, 759 F. Supp. 2d 822, 828 (E.D. La. 2010) (quotations and citations omitted).

---

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed. Cir. 2013).
. . . .  [I]t seems a definitive ruling on eligibility before claim construction is only warranted in <u>narrow</u> circumstances, making such a ruling <u>the exception rather than the rule</u>.
. . . .  [T]he Court cannot simply assume that Lifescan's implicit positions on the meaning of claim terms are correct without a meaningful ability to examine fully what <u>a person of ordinary skill</u> in the art would interpret those terms to mean.
The difficulty of making a substantive ruling on the validity of an issued patent in what is – in essence – a complete vacuum cannot be understated.  While the claim language of some patents may be so clear that the court need only undertake a facial analysis to render it invalid at the pleading stage, that will <u>not be the norm</u> and is certainly not the case here.

- 9 -

### B.      Patent Eligibility Under 35 U.S.C. § 101

Section 101 of the Patent Act defines the four broad categories of patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter."  35 U.S.C. § 101.  "In choosing such expansive terms . . . modified by the comprehensive word 'any,' Congress plainly contemplated that the patent laws would be given a wide scope." *Bilski v. Kappos*, 130 S. Ct. 1328, 1332 (2010) (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980)).  However, to avoid permitting an overly broad grant of rights that could "pre-empt use of [an] approach in all fields and [] effectively grant a monopoly over an abstract idea," "[l]aws of nature, natural phenomena, and abstract ideas" are non-patentable exceptions to § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. __, 134 S.Ct. 2347, 2354 (2014).  The Supreme Court has acknowledged that the analysis is inherently flawed, because "[a]t some level, 'all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Id.* at 2354 (quoting *Mayo Collaborative Servs. v. Prometheus Labs*., 132 S. Ct. 1289, 1293 (2012)).  Yet, they are not patent-ineligible "simply because [an invention] involves an abstract concept." *Id.* at 2354 (quoting *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)).  Accordingly the exception for abstract ideas in narrow, "lest it swallow all of patent law." *Id.* at 2354.

A proper § 101 analysis is a fact intensive process that requires a court to interpret the claims of a patent from the eyes of a PHOSITA. *See My Health*, C.A. No. 2:14-cv-683-RWS-RSP, at 3 (quoted above).  The § 101 analysis requires the application of a two-step process to determine whether the claims at issue are a patent-ineligible concept, which in this case Defendants allege is an "abstract" idea. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. __, 134 S.Ct. 2347, 2355 (2014).  The Supreme Court has not expressly defined an "abstract" idea. *Id.* at 2357 ("[W]e need not labor to delimit the precise contours of the 'abstract ideas' category.").  But, the dictionary definition of abstract is: "[e]xisting in thought or as an idea but not having a

physical or concrete existence."  Hare Decl., Ex. B; *see also Bilski*, 130 S.Ct. at 609-10 ("[A] principle, in the abstract, is a fundamental truth; and original cause; a motivation." (citations, quotations, and alterations omitted)).

The first step in the analysis is to "determine whether the claims at issue are directed to one of those patent-ineligible concepts" (also referred to as judicial exceptions), e.g., "a fundamental economic practice long prevalent in our system of commerce." *Alice*, 134 S.Ct. at 2355-56.[7]  If the court finds that the patent is not directed to a judicial exception, i.e., the patented invention is not an abstract idea, then the analysis ends there, and the motion to dismiss under § 101 must be denied.

If, however, the court finds that the patented invention is directed to a patent ineligible concept, then the court turns to the second step in the analysis and "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice Corp.*, 134 S.Ct. at 2357 (citing *Mayo Collaborative Serv. v. Prometheus Labs., Inc.*, 566 U.S. 10, 132 S.Ct. 1289, 1294, 1298 (2012)).  Under the second step, even if an invention recites an abstract idea, the invention is patentable if it has additional features to ensure that the claim is more than drafted to monopolize, or preempt, the abstract idea. *Id.*  When considering the inventive concept of claim limitations, the limitations are considered both individually and as an ordered combination. *Id.* at 2355.  This approach requires that "claims 'must be considered <u>as a whole</u>.'" *Id.* at 2355, fn. 3 (quoting *Diamond v. Diehr*, 450 U.S. 175, 188 (1981)) (emphasis added).

One useful and often dispositive test for analyzing patentability under § 101 is the "machine-or-transformation test." *Bilski*, 130 S.Ct. at 3227.  A method is patentable under this

---

[7] *See also* 2014 Interim Guidance on Patent Subject Matter Eligibility, 37 C.F.R. § 74622-24 (requiring patent examiners to identify the judicial exception as it is recited in the claims).

test if "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Id.* at 3226-27 (citing *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008)) (the method claims in *Bilski* were directed to the concept of hedging risk and failed the machine-or-transformation test).

### C.   Presumption of Validity Applies to § 101 and Patent Ineligibility Must be Proven by Clear and Convincing Evidence.

A patent and its claims enjoy a presumption of validity that can only be overcome by clear and convincing evidence.  35 U.S.C. § 282; *Microsoft Corp. v. i4i Ltd P'ship*, 131 S. Ct. 2238, 2242 (2011) (holding that the clear and convincing standard applies even when the ultimate question is one of law).  This presumption of validity applies to the § 101 analysis.  *See, e.g., CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1304-05 (Fed. Cir. 2013) *aff'd Alice*, 134 S. Ct. 2347 (2014); *Freeny v. Murphy Oil Corp.*, No. 2:13-CV-791-RSP, Dkt. No. 143, at 4 (E.D. Tex. May 22, 2015) (denying motion for summary judgement based on § 101 because defendant failed to clearly and convincingly show the patent was ineligible).[8]

## IV.   ARGUMENT

### A.   Defendants' Motions Must Be Denied Because Claim Construction is Necessary and Fact Issues Exist That Cannot Be Resolved Under Rule 12

#### 1.   Defendants' motions are premature because they inherently rely on claim construction of technical terms

Although within this Courts discretion, this Court and numerous others have recognized that a § 101 motion to dismiss is premature when claim construction issues exist—this is especially true for technical, non-business-method patents.  "Claim construction . . . is an

---

[8] *See also Card Verification Solutions, Inc. v. Citigroup*, No. 13-C-6339, 2014 U.S. Dist. LEXIS 137577, at *6 (N.D. Ill. Sept. 29, 2014) (It is "rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter because every issued patent is presumed to have been issued properly, absent clear and convincing evidence to the contrary."  Dismissal is appropriate "solely when the *only plausible reading* of the patent is that there is clear and convincing evidence of ineligibility.").

important first step in a § 101 analysis." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008).  "[I]f

there are factual disputes, claim construction should be required." *Ultramercial, Inc. v. Hulu,*

*LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013) ("*Ultramercial I*").[9]  And even if not required, "it

will ordinarily be desirable — and often necessary — to resolve claim construction disputes prior

to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the

basic character of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of*

*Canada*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012).[10]  For example, "claim meaning may clarify

the actual subject matter at stake in the invention and can enlighten, or even answer, questions

about subject matter abstractness." *Ultramercial I*, 722 F.3d at 1340.  Accordingly, courts in this

and other Districts have routinely denied Rule 12 motions made on § 101 grounds as

premature.[11]

---

[9] Though the Supreme Court vacated and remanded *Ultramercial I* for further consideration in light of its ruling in *Alice*, it did not question the Federal Circuit's procedural analysis set forth in Section II of *Ultramercial I* in *Alice* or the ruling vacating judgment. *See WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014).

[10] *See also Ass'n for Molecular Pathology v. USPTO*, 702 F.Supp.2d 181, 214 (S.D.N.Y. 2010) ("Before considering the patent-eligibility of a patent claim, the disputed terms in the claims must be construed in order [to] ensure the scope of the claims is accurately assessed.").

[11] *See, e.g., My Health*, cv-683-RWS-RSP, at 2-3 (quoted above); *Content Guard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-cv-1112-JRG (E.D. Tex. Arp. 8, 2015) (denying defendants' § 101 motions because the parties § 101 briefing was "fundamentally intertwined with disputes regarding the proper construction of terms"); *Rockstar Consortium US LP, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:13-cv-894-JRG, 2014 U.S. Dist. LEXIS 67097, at *13 (E.D. Tex. May 15, 2014) ("If there are factual disputes about the patent's claims, . . . the question of patentable subject matter should be reserved until claim construction."); *DietGoal Innovations LLC v. Tyson Foods, Inc.*, No. 2:12-CV-338- JRG-RSP, 2013 U.S. Dist. LEXIS 189004, at *2-*3 (E.D. Tex. Mar. 25, 2013) ("The Federal Circuit has held that claim construction is an important first step in any §101 analysis.  The Court agrees that claim construction briefing, along with supporting evidence, may be necessary to determine whether the patent-in-suit contains patent-eligible subject matter."); *MacroSolve, Inc. v. GEICO Ins. Agency, Inc.*, No. 6:12-cv-74-MHS-JDL, 2013 U.S. Dist. LEXIS 189003, at *5 (E.D. Tex. Feb. 5, 2013), *adopted by* 2013 U.S. Dist. LEXIS 189009 (E.D. Tex. Mar. 6, 2013) (rejecting argument that "claim construction is not necessary" and denying motion to dismiss where the parties disputed the meaning of claim terms relating to the defendants' unpatentability claims; "[s]uch a dispute should be resolved at claim construction, not on the pleadings pursuant to Fed. R. Civ. P. 12(c)."); *Data Distrib.*, 2014 WL 4162765, at *14-*15 (denying motion to dismiss; "[a]t this procedural posture, the Court cannot hold that Defendants have shown by clear and convincing evidence that no plausible construction of the [Asserted] Patent's claims will satisfy the *Alice* test for patentability."); *Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA LLC*, No. 13 C 4417, 2014 WL 983123, at *5 (N.D. Ill. Mar. 13, 2014) (denying motion "without prejudice to being renewed after the terms of the patent are construed"); *Sandborn v. Avid Tech., Inc.*, No. CIV.A. 11-11472-FDS, 2013 WL 4784265, at *6 (D. Mass. Sept. 5, 2013) ("Because this Court has not engaged in any claim construction, it cannot make any final determination as to whether the terms of the claims are sufficiently restricted

Defendants' conclusory assertion that "[c]laim construction is unnecessary to resolve the § 101 question here" (Defs' Mt., at 7, fn. 4) is meritless.  In fact, they appear to believe that claim construction is necessary here and have expressly reserved their right to raise claim construction argument for purposes of noninfringement.  (*See* Hare Decl., Ex. A (Defendants' counsel stating "we do not waive any issues or defenses.")  It is black letter law that claims are construed the same for infringement as validity.[12]  If Defendants have narrowing claim constructions argument for their noninfringement defense, then they should be candid and disclose those arguments now.  Such arguments are clearly relevant here.

It is further anticipated that Defendants will attempt to flip their burden onto Loramax by arguing that Loramax has not identified any terms for construction.[13]  This argument is a *non sequitur* because, as explained below, this argument is premature and Loramax does herein identify disputed terms.

Loramax has yet to even identify which claims it is asserting against Defendants, let alone have the parties proposed claim terms for construction and proposed constructions.[14]  It is highly unlikely that there will be no claim construction disputes in this case.  (See Dkt. No. 13 at 4-5 (Defendants' answers and counterclaims allege "divided infringement," "prosecution history estoppel," and assert a noninfringement defense).)  Indeed, there were numerous claim terms in

---

to an application of an abstract idea, rather than an abstract idea itself."); *Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, 2010 U.S. Dist. LEXIS 120225, at *9 (N.D. Ohio Nov. 12, 2010) ("The record that the Court may consider on a 12(b)(6) motion — the complaint and the attached patent — is insufficient for the Court to construe the patent claims contrary to plaintiff's allegations of infringement and rule that it is invalid."); *Deston Therapeutics LLC v. Trigen Labs., Inc.*, 723 F. Supp. 2d 665, 672 (D. Del. 2010) (denying motion to dismiss as premature because "claim construction is generally not appropriate on a motion to dismiss").

[12] *E.g., W.L. Gore & Associates Inc. v. Garlock Inc.*, 842 F.2d 1275, 1279 (Fed. Cir. 1988) (claims are construed the same for validity and for infringement).

[13] *See, e.g., Loramax v. Fedex*, 2:15-cv-751-RWS-RSP, Dkt. No. 17 (defendant argues that "in its amended complaint Loramax identified no specific claim term requiring construction.")

[14] *See SanDisk Corp. v. Memorex Prods., Inc.*, 415 F3d 1278 (Fed. Cir. 2005) ("After discovery the court expects the parties to refine the disputed issues and learn more about the claim terms and technology, at which point a more accurate claim construction can be attempted.")

dispute in a prior litigation involving the '126 patent.[15]  For example, in the prior litigation, there were disputes regarding whether the preamble was limiting and the meaning of "network" and "communication profile," among others.  *Id.*  Each of these terms, and others, when properly construed, place meaningful limits on claims that distinguish the claimed inventions from the prior art and are relevant—at a minimum—to the Court's second-step determination of whether the claims preempt the alleged abstract idea.[16]

Defendants' reliance on, *inter alia*, the *Bancorp* and *Dick's Sporting Goods* cases is misplaced, and indeed those cases further demonstrate that their motion is premature.  (Defs' Mt. at 7, fn. 4.)  The Federal Circuit in *Bancorp* acknowledged that "the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter," and proceeded to construe the asserted patent claims *before* conducting the § 101 analysis.  *Bancorp*, 687 F.3d at 1273-74.  And in *Dick's*, the case was not resolved until after the parties had filed a joint claim construction and prehearing statement that identified claim terms and proposed construction.  *Dick's*, 21 F.Supp.3d at 764.  And, because that patent was a nontechnical patent, the court was able to analyze the patent without the aid of expert testimony.  *Id.* at 762.  This not the case here.  (*See* FAC, ¶ 12.)

Defendants' reliance on *In re Bilski* and *In re Roslin Inst.* in support of their contention that "patent eligibility under Section 101 is a 'threshold test'" (Defs' Mt. at 6) is grossly misleading.  Both of these cases were on appeal from a PTO proceeding—not district court litigation.  Unlike litigation, PTO examination is conducted by a trained patent examiner who

---

[15] *See barnesandnoble.com v. Xerox Corp.*, 10-cv-5758 (S.D.N.Y), Dkt. No. 31, at 13-20 (declaratory judgment plaintiff's opening claim construction brief identifying about 10 terms and phrases from the '126 patent needing construction).

[16] *See, e.g., Sandborn*, 2013 WL 4784265, at *6 ("Because this Court has not engaged in any claim construction, it cannot make any final determination as to whether terms of the claims are sufficiently restricted to an application of an abstract idea, rather than an abstract idea itself.").

must possess technical training in the relevant field of art.   (*See, e.g.*, Hare Decl., Ex. C.)
Further, PTO rules require the examiner to make findings of fact and conclusions of law,
including construing claims, to support a rejection (*see* MPEP § 2103, ¶ VI), thus permitting
appellate review.   Under Rule 12, in contrast, no evidence from a PHOSITA can be taken nor
can the claims be properly construed.

This case is far more analogous to *Data Distributions*, where the court denied the
defendants' Rule 12(b)(6) motion to dismiss on § 101 grounds as premature in light of "the lack
of Plaintiff's proposed constructions or any agreement about claim construction":

> Here, Plaintiff has not submitted its proposed constructions, and
> the Court is reluctant to presume, *sua sponte,* the constructions that
> would be most favorable.   As discussed further *infra*, Defendants
> forcefully argue that the '908 Patent would fail the *Alice*
> abstractness test, but Defendants' arguments rely on interpreting
> the '908 Patent's claims and stripping away generic language.   It is
> difficult to prove a negative, *i.e.,* to show that no plausible
> construction exists, but that is the burden that Defendants bear at
> this procedural posture.

*Data Distrib.*, 2014 WL 4162765, at *8.[17]   Defendants' motion is at an even earlier procedural
posture than in *Data Distributions* and should likewise be denied.

Defendants' motions inherently relies on constructions that Loramax disputes.   For
example, Defendants assert that the claims can be "performed by a human" and generic
conventional components in direct conflict with the facts alleged in Loramax's complaint.
(*Compare* Defs' Mt. at 15 *with* FAC, ¶¶ 14-15.)   Claim construction is required to determine
whether the steps or elements of the claims (e.g., "selecting from the communications profile"

---

[17] *See also MacroSolve*, 2013 U.S. Dist. LEXIS 189003, at *5 (rejecting argument that "claim construction is not
necessary" and denying motion where the parties disputed the meaning of claim terms relating to the defendants' §
101 claims).

(claim 6)) require a computer or involve conventional components.[18]   Loramax asserts that the claims do require a specially programmed computer, e.g., a repository to store the communication profile and a specialized software module to select it.  (*See also* FAC, ¶ 12.)

Due process concerns, as evidenced by this District's collective wisdom in promulgating its local rules, require a proper *Markman* analysis to be conducted based on a complete evidentiary record.  *See* P.R. 4-1 to 4-6 (laying out the procedure for claim construction); P.R. 1-2 (allowing for deferral of motions raising claim construction issues); *see also, e.g., Nazomi Comm., Inc. v. Arm Holdings, PLC*, 403 F.3d 1364 (Fed. Cir. 2005) (remanding because the district court did not construe the disputed claim term in sufficient detail for appellate review).  The actual scope of the claims will inform and control the § 101 analysis.

Accordingly, Defendants' motions are premature.

2.   <u>Defendants' motions must fail because they are premised on unsupported facts in direct conflict with Loramax's First Amended Complaint</u>

Analysis of patentable subject matter under § 101, "while ultimately a legal determination, is rife with underlying factual issues."  *Ultramercial I*, 722 F.3d at 1339;[19]  *see*

---

[18] Defendants' reliance on the Fred Smith example further evidences the dangers of a lay reading of a technical patent.  (*See* Defs' Mt. at 13.)  In that example, Fred checks the fax box, which cause documents to be routed to his fax number.  It is the underlying computerized system (e.g., as shown in FIG. 3) that performs the steps of "identifying" Fred as recipient, "accessing" his profile, "selecting" his fax number from the profile, and "transmitting" a document to the appropriate device, i.e., fax machine.  Fred does not.

[19] Federal Circuit explained  (internal citations omitted):

> [T]he 101 inquiry requires a search for limitations in the claims that narrow or tie the claims to specific applications of an otherwise abstract concept.  Further, factual issues may underlie determining whether the patent embraces a scientific principle or abstract idea.  If the question is whether "genuine human contribution" is required, and that requires "more than a trivial appendix to the underlying abstract idea," and were not at the time of filing "routine, well-understood, or conventional," factual inquiries likely abound.  Almost by definition, analyzing whether something was "conventional" or "routine" involves analyzing facts.  Likewise, any inquiry into the scope of preemption — how much of the field is "tied up" by the claim — by definition will involve historic facts: identifying the "field," the available alternatives, and preemptive impact of the claims in that field.

also *Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) ("Patent eligibility under § 101 presents an issue of law [that] may contain underlying factual issues.").

At least the following factual disputes preclude dismissal at this stage (*compare* Defs' Mt. *with* FAC, ¶¶ 7-15)[20]:

- whether the purported abstract is a "building block[] of human ingenuity," *Alice*, 134 S. Ct. at 2349, or a "fundamental economic practice long prevalent in our system of commerce," *Bilski*, 561 U.S. at 611;

- whether each claim is directed to the purported abstract idea, or rather to new and useful computerized methods and systems for enabling recipients to designate a preferred manner of receiving documents in a communication profile and for senders to automatically convey information to the recipient in the preferred manner by accessing the communication profile, among other things;

- whether the level of skill in the art for a PHOSITA requires technical training and experience;

- whether each claim would preempt the use of the purported abstract idea, or more broadly "user-preferred communications" (Defs' Mt. at 11), in all fields, and would thus effectively grant a monopoly over an abstract idea;

- whether the limitations, when considered individually or as an ordered combination, of each claim describe a technological innovation;

- whether the limitations, when considered individually or as an ordered combination, of each claim were "well-understood, routine, or conventional" as of the date of the inventions;

- whether the limitation, when considered individually or as an ordered combination, merely require generic, conventional components; and

- whether each claim can be performed in the human mind.

Such factual issues are necessary predicates to Defendants' arguments.  And, Loramax has pled such facts that directly contradict positions taken by Defendants.[21]  Defendants do not

---

[20] *See also* Hare Decl., Ex. A (Defendants reserving the right to contest validity and infringement).
[21] Defendants should not be allowed to address the facts in Loramax's First Amended Complaint for the first time on reply.

even bother to address a single fact in Loramax's complaint, nor can they in the Rule 12 context. Given Defendants' inadequate showing and the Rule 12 context, the Court must conclude that the claims are valid, including that there is no evidence that the claims: (a) are directed to the purported abstract idea of "distributing information in a manner preferred by a user"; (b) require only matter "conventional" or "generic" components as of the invention date; (c) preempt the purported abstract idea; or (d) considered in context as a whole, describe non-technological innovations.

### B. Defendants' Motions Only Address Portions of Two Claims and Fail to Consider Any Claim from the Perspective of a PHOSITA; They are Therefore Deficient on Their Face

Defendants' motions must also be denied because they provide no evidence, let alone clear and convincing evidence, that *all* of the claims of the '126 patent (totaling 45 claims) are directed to ineligible subject matter. Defendants merely cherry pick a few words from claims 6 and 25 while leaving out the meat from each element and each claim as a whole. For example, Defendants only analyze the terms "network," "server," "client," "user interface," and "communication channels" for claim 25. (*See* Defs' Mt. at 15-16.) Their entire analysis is out of context from how each of those terms is used in their respective claim element and in the claim as a whole. Their analysis of claim 6 is similarly deficient.

Here, each of those elements in context describes specific functionality performed by a computer having specialized software. For example, claim 25 expressly states the functionality of a communication channel: "a communication channel *having properties defining a preferred mode of communication between said claim and said server*" (emphasis added). Defendants entirely ignore the emphasized portion of the claim element and instead mischaracterize this element. (*See* Defs' Mt. at 16 (describing the communication channel "as being just various methods of standard communication.").) Defendants' analysis of the other elements is similarly

flawed.

In determining patent eligibility under § 101, each of the "claims must be considered as a whole," not just portions of claims Defendants find convenient to address. *See Alice*, 134 S.Ct. at 2355 and fn. 3 ("Because the approach we made explicit in Mayo considers all claim elements, both individually and in combination, it is consistent with the general rule that patent claims 'must be considered as a whole'") (quoting *Diamond v. Diehr*, 450 U.S. 175, 188, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981)).[22]  Defendants' failure to address all the elements of any claim, is fatal to their motion.

Except for claims 6 and 25, Defendants' do not analyze any other claim of the '126 patent.  Loramax is not required to identify each and every claim it is going to assert at this stage of litigation.  Nonetheless, Loramax is contemplating asserting other independent claims and dependent claims.  Such claims are outside the ambit of Defendants motions and thus dismissal the complaint is not proper as Loramax may still move forward on unchallenged claims.

Lastly, the claim must be consider from the viewpoint of a PHOSITA.  *See, e.g.*, *My Health*, cv-683-RWS-RSP, at 2-3 (quoted above).  Defendants do not even mention this standard.

### C.    Defendants Fail to Clearly and Convincingly Demonstrate That Any of the Claims are Invalid Under § 101

1.    <u>Defendants' motion sans expert testimony fails to appreciate the invention of the '126 patent and leaves out the heart of the claimed invention which is not an abstract idea</u>

Defendants' assertion that the claims are directed to the purported abstract idea of

---

[22] *See also France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-cv-4967-WHO, 2014 U.S. Dist. LEXIS 52564, at *44-*45 (N.D. Cal. Apr. 14, 2014) ("Supreme Court precedents require a 'claim-by-claim approach to subject-matter eligibility that avoids rigid line drawing.'"); *U.S. Bancorp v. Solutran, Inc.*, No. CBM2014-00076, 2014 WL 3943913, at *8 (Patent Tr. & App. Bd. Aug. 7, 2014) ("In determining whether a . . . claim recites an abstract idea, we must examine the claim as a whole."); *PNC Bank v. Secure Axcess, LLC*, No. CBM2014-00100, 2014 WL 4537440, at *12 (Patent Tr. & App. Bd. Sept. 9, 2014) (same).

"distributing information in a manner preferred by a user" is a gross mischaracterization and oversimplification, and is contrary to the actual language of the claims.  Instead, if the invention of claims 6 and 25 had to be generalized, it would be directed to: "the invention relates to a network having <u>recipient defined communication channel profiles</u> and <u>the capability of network access of the profiles</u>."  (The '126 patent, col. 1, ll. 9-11 (emphasis added).)  The '126 patent then goes on to describe in detail the technical implementation of the invention.  *See, e.g.*, the '126 patent, FIG. 3 (reproduced above).  Defendants' characterization of the '126 patent leaves out the crux of the invention—that is the concept of recipient control of its communication profile and network access of the profile.[23]  Because Defendants' characterization of the claims merely as distributing information in a manner preferred by a user "does not tie adequately the claim language to the purported abstract concept," Defendants have failed to meet their burden to show that either claim 6 or 25 is directed to an abstract idea.  *PNC Bank*, 2014 WL 4537440, at *12; *Solutran*, 2014 WL 3943913, at *8.

Moreover, even if the claims were directed to the purported abstract idea of "distributing information in a manner preferred by a user"—which they clearly are not—Defendants provide no evidence that distributing information in a manner preferred by a user is a "fundamental truth[] or fundamental principle[] the patenting of which would pre-empt the use of basic tools of scientific and technological work."  *Alice*, 134 S. Ct. at 2355; *Helios Software, LLC v. Spectorsoft Corp.*, No. 12-cv-081-LPS, 2014 U.S. Dist. LEXIS 135379, at *53-*54 (D. Del. Sept. 18, 2014) ("Although [the claims may be drawn to] principles fundamental to the ubiquitous use of the Internet or computers generally, [defendant] has provided no support for that position.  As such, the Court cannot agree with [defendant] that the patents-in-suit are drawn

---

[23] This is precisely why proper claim construction with the aid of expert testimony is required here.

to an abstract idea."). Nor have Defendants set forth any evidence that the purported abstract idea is "a fundamental economic practice long prevalent in our system of commerce." *Bilski*, 561 U.S. at 611. Unlike in *Alice*, where the Court referred to books and journal articles discussing the use of a third-party intermediary to reduce settlement risk, or in *Bilksi*, where the Court relied on multiple textbooks discussing the fundamental economic concept of hedging risk, Defendants here point to no equivalent clear and convincing evidence. *See Alice*, 134 S. Ct. at 2356; *Bilski*, 561 U.S. at 611.

In fact, the only evidence cited by Defendants—the patent itself—shows that the claims are drawn not to an abstract idea, and rather are *improvements to existing technology* in the field of computerized document delivery. *See* the '126 patent, col. 1, l. 12 – col. 4, ll. 4-10 (stating that conventional systems "do not enable the sender of information on a network to identify the receiver's preferable form of receipt."). It is well established that improvements upon existing technology are patent eligible under § 101. *Alice*, 134 S. Ct. at 2358.

Rather than claiming the purported abstract idea of distributing information in a manner preferred by a user *per se*, the claims describe specific computerized methods and systems that, *inter alia*, require tangible hardware and software specifically programmed to store communications profiles and provide senders and recipients access to those profiles and transmit information in accordance with the profiles (e.g., hard copy documents to printers or electronic documents to an email server). (*See, e.g.*, FAC, ¶ 12.) Such claims are inherently not abstract.[24]

Defendants' "grandma" hypothetical illustrates their hopeless misunderstanding of the

---

[24] *See, e.g. Rockstar*, 2014 U.S. Dist. LEXIS 67097, at *15 ("'[A] method of notifying a user of an incoming communication event,' is inherently limited to the sphere of application rather than abstraction. 'A method of notification' requires a physical act in the world – delivery of some form of notification to a user."); *Solutran,* 2014 WL 3943913, at *8 ("[T]he basic, core concept of independent claim 1 is a method of processing paper checks, which is more akin to a physical process than an abstract idea. Indeed, there is nothing immediately apparent about this basic, core concept that would indicate that it is directed to an abstract idea at all.").

'126 patent.  (Defs' Mt. at 10 (implying that the claims of the '126 patent cover grandkids sending grandma letters if they knew she preferred letters)).)  The grandma hypothetical is not within the ambit of the '126 patent.  For grandma to come within the ambit of the '126 patent, for example, she would have to hire software developers to build a repository to store her communication profile and then buy or rent server space to host that repository at a network accessible location.  (*See* the '126 patent, FIG. 3, 105 and 106.)  Then, grandma would have to access that profile and specify "letters" as her preferred mode of communication using a user interface that she would have also had custom developed.  (*See id.*, FIGS. 4 and 6.)  Then, the siblings would send information comprising their "letter" via a computer running specialized software, e.g., a "communication channel client/server manager" (*see id.*, FIG. 3, 102 and FIG. 10).  That specialized computer would automatically retrieve grandma's communication profile for the network location and direct the "letter" to grandma's printer or to the siblings' printer for printing and mailing, depending on which is specified in grandma's communication profile.

When the claims are properly construed, none of the steps or elements read on actions of grandma or the sibling, but instead read on the custom software and hardware that grandma had to build to come under the ambit of the '126 patent.[25]  Such custom software and hardware is the "gravamen" of the '126 patent.  Such is neither conventional, nor generic.  (FAC, ¶ 13.)  In fact, such customer software and hardware is hardly conventional or generic today, let alone in 1993.[26]  The claims of the '126 patent are not directed to "human activity."  (FAC, ¶ 14.)  The cases Defendant relies on help neither Defendants, nor grandma.

---

[25] *See* fn. 18 *supra*.
[26] For example, today there are numerous way to communicate with a person using a smart phone (e.g., text message, email, WhatsApp, and Facebook).  Yet even today, short of a recipient manually communicating his preference to a sender in advance, there is no way for a recipient to specify his preferred mode.  Even if the preference is known, the sender must manually select the preferred mode of communication.  The '126 solves this problem through a technology.

Because Defendants have failed to set forth any evidence, let alone clear and convincing evidence, that either claim 6 or 25, when properly considered as a whole, is drawn to an abstract idea, the § 101 inquiry ends here, and their motion to dismiss must be denied.

2.    <u>Defendants fail to meet their burden for the second step because the limitations of the claim ensure that the claims amount to significantly more that the purported abstract idea</u>

a.    *The claims do not preempt*

The fundamental concern driving § 101's principle excluding abstract ideas from patent eligibility is preemption. *Alice*, 134 S. Ct. at 2354; *see also Cal. Inst. of Tech. v. Hughes Communs., Inc.*, No. 2:13-cv-07245-MRP-JEM, 2014 U.S. Dist. LEXIS 156763, at \*37 (C.D. Cal. Nov. 3, 2014). But Defendants do not even attempt to prove that any of the claims would preempt the purported abstract idea, but instead assert hyperbole: "the claims . . . are not limited to a particular technical field and preempt the entire field of user-preferred communications"[27] (Defs' Mt. at 11). This statement are false or at minimum puts into dispute a material fact. (*See* FAC, ¶ 15.)

Loramax's First Amended Complaint alleges that there are alternate ways of distributing information based on user preferences that are not covered by the claims of the '126 patent. (FAC, ¶ 15.) For example, as discussed above in detail, Defendants' grandma hypothetical is not covered by any claim of the '126 patent, nor are today's smart phones as discussed at fn. 26 *supra*.

In contrast, Defendants have made no credible showing of preemption here. Defendants' themselves have brought counterclaims of noninfringement and affirmative defenses of divided infringement here. (Dkt. No. 13 at 5-6.) There could be no basis for such defenses if Defendants

---

[27] Defendants themselves refused to confirm this position. (Hare Decl., Ex. A, ¶ 5.)

actually believed that the '126 patent was so broad as to cover all forms of user-preferred communications.[28]

Thus, even assuming *arguendo* that the purported abstract idea is an abstract idea, Defendants' failure to show that any of the claims preempt all use of this alleged abstract idea requires that their motion be denied.  *See, e.g., Ameranth, Inc. v. Genesis Gaming Solutions, Inc.*, No. SACV 11-00189 AG, 2014 WL 7012391, at *6 (C.D. Cal. Nov. 12, 2014) ("[O]ne could implement [the abstract idea in] many different … systems that do not infringe the claims.  Thus, Defendants have not shown how these claims implicate 'the basic underlying concern that these patents tie up too much future use' of the abstract idea.").[29]  At a minimum, this creates an issue of fact inappropriate for resolution on a motion to dismiss.

   *b.*  *The limitations of the claims, considered as an ordered combination, represent particular applications of the purported abstract idea*

Nor have Defendants shown that the "elements of each claim both individually and 'as an ordered combination' [fail to] 'transform the [supposedly abstract] nature of the claim[s]' into a patent-eligible application."  *Alice*, 134 S. Ct. at 2355.  Indeed, nowhere in Defendants' "analysis" of the second step do they even consider the elements of the claims individually or as an ordered combination.  As discussed in detail in § IV.B *supra*, Defendants merely cherry pick a few terms for conclusory analysis.  They fail to analyze any terms from any claim other than claims 6 and 25.

When the proper analysis is conducted, the claims clearly cover "significantly more than

---

[28] *See also* Hare Decl., Ex. A, ¶¶ 6-7 (Defendants refusing to confirm their preemption argument).

[29] *See also Eclipse IP LLC v. McKinley Equip. Corp.*, No. CV 14-154-GW AJWX, 2014 WL 4407592, at *5 (C.D. Cal. Sept. 4, 2014) ("[T]he question in the abstract idea context is whether there are other *ways* to use the abstract idea in the same field."); *Cal. Tech.*, 2014 U.S. Dist. LEXIS 156763, at *48 (holding that the claim "limitations are not necessary or obvious tools for achieving error correction, and they ensure that the claims do not preempt the field of error correction.  The continuing eligibility of this patent will not preclude the use of other effective error correction techniques.").

a patent" on the purported abstract idea.  *Alice*, 134 S. Ct. at 2355.  Rather than simply a claim

on the purported abstract idea, for instance, claim 6 requires in a networked environment:

- "identifying a given subscriber from the plurality of subscribers to receive data over the network, said identifying step accessing the communication profile of the given subscriber";

- "selecting from the communication profile of the given subscriber a mode in which to transmit data";

- "automatically specifying predetermined data to be conveyed to the given subscriber over the network channel in the mode of data identified by said selecting step"; and

- "responsive to the identification of the given subscriber and the selection of a mode of data receipt specified by the given subscriber, transmitting the predetermined data in the mode specified by said specifying step to the given subscriber so that data is received in a convenient form."

These additional elements, individually and as an ordered combination, describe a particular

application of the purported abstract concept, and not a claim to the idea itself.  *See* discussion of

the grandma hypothetical in § IV.C.1 *supra*; *see also* FAC, ¶ 12.

The numerous other elements of the dozens of other claims that Defendants do not

specifically address also demonstrate that the claims cover significantly more than the mere

purported abstract idea.[30]

c.      *The claims are directed to technological improvements*

The additional elements of the claims, individually or as an ordered combination,

describe inventive concepts that transform any purported underlying abstract idea into a patent-

eligible application of that idea.  *See Alice*, 134 S. Ct. at 2357.  The asserted patents themselves

describe (and must be viewed in Loramax's favor) that the claimed inventions "solve a

---

[30] *See, e.g.*, dependent claims 29-30 (reciting elements of publication of the communication profile to a network repository).  These claims add significantly more as they represent an inventive design choice by the inventors that meaningfully excludes alternate design choices (e.g., they exclude a peer-to-peer implementation).

technological problem" and "improve[] an existing technological process," and are, therefore, eligible under § 101. *Alice*, 134 S. Ct. at 2358; *see also Bancorp*, 687 F.3d at 1279 ("'[I]nventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract' as to be ineligible for patent protection."). These facts are properly alleged in the First Amended Complaint. (FAC, ¶ 13.)

As described in the '126 patent, although prior art provided user-preferred communications, the prior art systems still could not provide recipient defined communication profiles for providing recipients control. (The '126 patent, col. 1, ll. 9-11 and col. 4, ll. 15-28.) As the '126 patent explains (col. 12, ll. 3-17):

> Communication channels enable the recipients of documents in a network multimedia environment to define the form with which the document should take upon receipt. Initially, channel profiles are published to a defined network audience to establish a communication channel defined by the published profile. This enables a sender to distribute documents with a prior knowledge of the preferred disposition a document should have. An advantage derived from a receiver driven document distribution system is that information takes the form most desired by the document recipient. Communication channels help make systems more productive by enabling information receivers to have information in their desired format so that it does not need to be converted from multiple sender formats.

*See also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014) (upholding as eligible claims to "an inventive concept for resolving [a] particular Internet-centric problem, rendering the claims patent-eligible").

Accepting the descriptions of the prior art and claimed inventions from the intrinsic record as true and drawing all reasonable inferences in favor of Loramax, as required under the current procedural posture, the claims can only be read as providing an improved technological solution as alleged in the First Amended Complaint.

d.     *The additional elements are not merely generic computer functions*

Rather than consider the elements of all claims, Defendants attempt to shortcut the analysis by asserting that the claims "recite generic computing elements."[31]    (Defs' Mt. at 11.) Defendants' showing is deficient.  *See, e.g., Alice*, 134 S. Ct. at 2355 and fn. 3 (the approach is "consistent with the general rule that patent claims 'must be considered as a whole'" (citation omitted)).   The claims of the '126 patent can only be performed by specially programmed computer.  (FAC, ¶¶ 11-14.)   That is precisely why grandma would have to hire software developers if she wanted to practice the claims of the '126 patent.  *See* § IV.C.1 *supra*. Defendant cannot dispute these facts in the Rule 12 context.[32]

_____

[31] Merely because a patentee must use conventional words found in a conventional dictionary to describe his invention does not render a described element conventional or generic.  Per 35 U.S.C. § 112, a patent is required to describe the invention in terms so that a PHOSITA can practice the invention.  It is axiomatic that the patent must use 'convention' vocabulary.  *See also* MPEP, 5th Ed., Rev. 608.01(b) (Aug. 1993) ("The content of a patent abstract should be such as to enable the reader thereof, regardless of his or her degree of familiarity with patent documents, to ascertain quickly the character of the subject matter covered by the technical disclosure and should include that which is new in the art to which the invention pertains.")  A well-written technical patent in plain-English should not be unjustly punished.

[32] Even outside the Rule 12 context, Defendants' reliance on the fact that standard or conventional computer components may be used to implement the claims is unavailing, as § 101 does not require "specifically designed, non-generic hardware."  *Cal. Tech.*, 2014 U.S. Dist. LEXIS 156763, at *24 fn. 10; *see also In re Alappat*, 33 F.3d 1526, 1545 (Fed. Cir. 1994) (that a claim may "read on a general purpose computer programmed to carry out the claimed invention  . . . alone also does not justify holding [the] claim . . . unpatentable as directed to nonstatutory subject matter); *CLS Bank Int'l*, 717 F.3d at 1302, *aff'd, Alice*, 134 S. Ct. 2347 ("The key to this inquiry is whether the claims tie the otherwise abstract idea to a specific way of doing something with a computer, or a specific computer for doing something; if so, they likely will be patent eligible.").  For example, in *TQP Dev., LLC v. Intuit Inc.*, No. 2:12-cv-180-WCB, 2014 U.S. Dist. LEXIS 20077, at *16-*17 (E.D. Tex. Feb. 19, 2014), Judge Bryson, sitting by designation, held that requiring the use of computing devices, electronic transmitters, receivers, and pseudo-random number generating machines sufficiently limited the claims at issue, and rejected the defendants' argument that the claims were abstract because the claims were "device agnostic" in that they did not specifically recite particular types of devices. And in *Card Verification*, 2014 U.S. Dist. LEXIS 137577, at *11, the court similarly found that, though the claims were "device agnostic" and did not expressly require the use of a computer, "[a] plausible interpretation of the patent is that computing devices, software, keyboards, and credit card readers would be required to use the invention."  Accordingly, the court denied the defendants' motion to dismiss.  *See also Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 869 (Fed. Cir. 2010) ("The fact that some claims in the [asserted] patents require a 'high contrast film,' 'a film printer,' 'a memory,' and 'printer and display devices' also confirm this court's holding that the invention is not abstract.").  Similarly here, the claims are tied to systems, e.g., implementing communications profiles as exemplified by pseudo-code Appendices A and B to the '126 patent.

### 3.    Other indicia that the claims are patent eligible

#### a.    *The claims cannot be performed by human interaction alone*

As alleged in Loramax's First Amended Complaint, the claims of the '126 patent cannot be performed by human interaction alone.  (FAC, ¶ 14.)  *See also Prompt Med. Sys., L.P. v. AllscriptsMysis Healthcare Solutions, Inc.*, No. 6:10-cv-71, 2012 U.S. Dist. LEXIS 30694, at *29 (E.D. Tex. Feb. 13, 2012) (claims that require the use of a computer "cannot be performed solely as a mental process.").[33]  Defendants' cannot contest this fact in the Rule 12 context.[34]

Even if these motions were outside the Rule 12 context, Defendants do not even attempt to explain, for example, how a human without the aid of a computer would implement a "communication profile," much less "select[] from the communication profile . . . ." (claim 6). Defendants' applying-for-a-job hypothetical fails as it entirely reads out the "communication profile" element.   A human applying for a job would have to undertake the same process as grandma (described *supra*) to come within the ambit of the '126 patent.

#### b.    *The claims pass the machine-or-transformation test*

The "machine-or-transformation" test also provides a "useful clue" in the second step of the *Mayo* framework.  *Bilski*, 561 U.S. at 604; *CLS Bank*, 717 F.3d at 1301 ("[A] claim is meaningfully limited [and thus outside the scope of the exceptions to § 101] if it requires a

---

[33] *See also SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) (upholding eligibility where it was "clear that the methods at issue could not be performed without the use of a GPS receiver" and there was "no evidence … that the calculations [could] be performed entirely in the human mind.").

[34] Contrary to Defendants' assertions, there is no evidence that *all* the steps of *all* the claims can be performed entirely by the human mind.  In *Cal. Tech.*, the court rejected the so-called "paper and pencil analysis" altogether as "unhelpful for computer inventions," "fruitless," "oversimplif[ying] §101," and "mislead[ing] courts into ignoring a key fact: although a computer performs the same math as a human, a human cannot always achieve the same results as a computer." 2014 U.S. Dist. LEXIS 156763, at *49 fn. 19, *50.  The court explained that "[m]any inventions could be theorized with pencil and paper, but pencil and paper can rarely produce the actual effect of the invention . . . .  At the end of the [pencil and paper] effort, [a person] would be left with a lot of paper that obviously would not produce the same result as the software."  *Id.* at *49.  Accordingly, courts "should not ask whether a human [can practice the claim] using pencil and paper, but instead "must ask whether the … claim … constitutes an inventive concept that sufficiently limits the claim's preemptive effect."  *Id.* at *51.

particular machine implementing a process or a particular transformation of matter.").  Here, the claims satisfy both prongs.

It is clear from the face of the claims that they are tied to particular computer machinery. For example, claim 6 requires "selecting from the communication profile . . . ," "automatically specifying predetermined data to be conveyed . . . ," and "transmitting predetermined data . . . ." These steps—when properly construed—Loramax submits are required to be performed by computers.  For system claim 25, similar steps are performed by computers.

The claims also transform data into a different state, thus satisfying the "transformation" prong of the test.[35]

### D. Defendants' § 101 Defense is Barred by 35 U.S.C. § 282(b), Which Only Permits Defenses "Specified in Part II as a Condition for Patentability"

Pursuant to 35 U.S.C. § 282, a patent is presumed valid and invalidity defenses in litigation are expressly limited to those "specified in part II as a condition for patentability."  35 U.S.C. § 282 (pre-AIA).  Section § 101 is not specified as "a condition for patentability."  35 U.S.C. Part II, §§ 100-212 (pre-AIA) (only listing §§ 102 and 103 as "Conditions for patentability"); *see also Graham v. John Deere Co.*, 383 U.S. 1, 12-13 (1966) (stating that the Patent Act of 1952 sets out "three explicit conditions" for patentability, none of which are patent eligibility).

Commentators have thoroughly analyze this issue, including, *inter alia*, the statutory text, recent case law, and legislative history.  (*See, e.g.*, Hare Decl., Exs. D-H.)  That analysis supports the conclusion that the recent trend allowing § 101 challenges in litigation is contrary to the plain

---

[35] *See Bilski,* 130 S. Ct. at 3227 (recognizing that inventions concerning computer software, data compression, and the manipulation of digital signals may be patentable under § 101); *In re Alappat*, 33 F.3d at 1543-44 (transformation of data by a machine through a series of mathematical calculations to produce a smooth waveform display on a rasterizer monitor constitutes patentable subject matter because it produces "a useful, concrete and tangible result"); *In re Abele*, 684 F.2d 902 (C.C.P.A. 1982) (finding patentable a claim providing for the electronic transformation of x-ray data into a particular visual depiction on a display).

text of § 282(b), Congress's intent to eliminate § 101 defense in litigation, and Supreme Court precedent requiring adherence to enacted statutory text.

## V.    __CONCLUSION__

Accordingly, Defendant's motion to transfer should be denied.  In the unlikely event that the Court should considers granting these motions, Loramax requests permission to conduct claim construction and infringement related discovery and leave to amend the complaint.[36]

DATED October 5, 2015.                             Respectfully submitted,

                                                          */s/ Jaspal S. Hare*
                                                   By:_____

                                                   Jaspal S. Hare (lead counsel)
                                                   Texas Bar No. 24083135
                                                   Jaspal.Hare@solidcounsel.com

                                                   David B. Dyer
                                                   Texas Bar No. 06313500
                                                   David.Dyer@solidcounsel.com

                                                   Bryan R. Haynes
                                                   Texas Bar No. 09283520
                                                   Bryan.Haynes@solidcounsel.com

                                                   **Scheef & Stone L.L.P**
                                                   500 North Akard, Suite 2700
                                                   Dallas, TX 75201
                                                   Tel: (214) 706-4200
                                                   Fax: (214) 706-4242

                                                   **ATTORNEYS FOR PLAINTIFF
                                                   LORAMAX  LLC**

---

[36] *See, e.g., Griggs v. Hinds Junior College*, 563 F.2d 179 (5th Cir. 1977) ("Granting leave to amend is especially appropriate, in cases such as this, when the trial court has dismissed the complaint for failure to state a claim." (citation omitted)).

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on Monday, October 05, 2015 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/  *Jaspal S. Hare*
Jaspal S. Hare