# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **LORAMAX LLC,**<br><br>  Plaintiff,<br><br>v.<br><br>**AMERICAN CENTURY PROPRIETARY HOLDINGS INC.,**<br><br>  Defendant. | Case No. 2:15-cv-649-RWS-RSP |
| **BLACK ROCK, INC.,**<br><br>  Defendant. | Case No. 2:15-cv-657-RWS-RSP |
| **COLONIAL LIFE & ACCIDENT INSURANCE COMPANY,**<br><br>  Defendant. | Case No. 2:15-cv-658-RWS-RSP |
| **DODGE & COX and DODGE & COX FUNDS,**<br><br>  Defendants. | Case No. 2:15-cv-664-RWS-RSP |
| **INVESCO LTD. and INVESCO DISTRIBUTORS, INC.,**<br><br>  Defendants. | Case No. 2:15-cv-667-RWS-RSP |
| **JACKSON NATIONAL LIFE INSURANCE COMPANY,**<br><br>  Defendant. | Case No. 2:15-cv-668-RWS-RSP |
| **LINCOLN NATIONAL CORPORATION,**<br><br>  Defendant. | Case No. 2:15-cv-669-RWS-RSP |
| **LORD ABBETT DISTRUBUTOR LLC,**<br><br>  Defendant. | Case No. 2:15-cv-670-RWS-RSP |

| | |
|---|---|
| **MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,**<br><br>Defendant. | Case No. 2:15-cv-671-RWS-RSP |
| **MFS FUND DISTRIBUTORS, INC.,**<br><br>Defendant. | Case No. 2:15-cv-673-RWS-RSP |
| **JANUS CAPITAL GROUP INC. and JANUS INT'L HOLDING LLC,**<br><br>Defendants. | Case No. 2:15-cv-674-RWS-RSP |
| **NEW YORK LIFE INSURANCE COMPANY,**<br><br>Defendant. | Case No. 2:15-cv-676-RWS-RSP |
| **THE DREYFUS CORPORATION**<br><br>Defendant. | Case No. 2:15-cv-677-RWS-RSP |
| **EATON VANCE CORP.**<br><br>Defendant. | Case No. 2:15-cv-678-RWS-RSP |
| **LEGG MASON INVESTOR, LLC**<br><br>Defendant. | Case No. 2:15-cv-679-RWS-RSP |
| **OPPENHEIMER FUNDS DISTRIBUTOR, INC.**<br><br>Defendant. | Case No. 2:15-cv-680-RWS-RSP |

**DEFENDANTS' REPLY IN SUPPORT OF**
**RENEWED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

As confirmed by Loramax's opposition[1] to Defendants' motion to dismiss[2], there is not a single credible argument that can pull the asserted patent out of the realm of patent-ineligibility.

## I. ARGUMENT

There is no plausible reading of the claims of the '126 Patent that precludes dismissal of the above-captioned actions under § 101.When no such reading of the claims can be sustained to satisfy the threshold inquiry under § 101, a Rule 12(b)(6) dismissal is an appropriate procedure for efficient administration of the Court's time and resources. *See I/P Engine, Inc. v. AOL Inc.*, 576 Fed. App'x 982, 995 (Fed. Cir. Aug. 15, 2014) (Mayer, J. concurring) ("[T]here are clear advantages to addressing section 101's requirements at the outset of litigation. Patent eligibility issues can often be resolved without lengthy claim construction, and an early determination that the subject matter of asserted claims is patent ineligible can spare both litigants and courts years of needless litigation"); *see also, Clear with Computers, LLC v. Altec Indus., Inc.*, No. 6:14-cv-00079, 2015 WL 993392, at *3 (E.D. Tex. Mar. 3, 2015) (granting Rule 12(b)(6) motion when the "Court sees no reason to delay its § 101 ruling while the parties continue to expend significant resources which will not impact or aid the Court in reaching this decision").

Despite Loramax's hand-waving, it has failed to identify a single issue pertinent to the eligibility analysis that would preclude dismissal—and instead has resorted to hyperbole, sarcasm, and red herrings concerning claim construction, self-serving legal conclusions couched as factual allegations, and disclosures outside of the claims themselves (such as pseudo-code). Unfortunately for Loramax, once the inquiry is properly focused on the claims themselves, there

---

[1] *See, e.g.*, Dkt. No. 25. Loramax filed a single, consolidated response to Defendants' renewed motions to dismiss (hereinafter, "Opp.").

[2] *See, e.g.*, Case No. 2:15-cv-649-RWS-RSP at Dkt. No. 22 ("Motion"). For the sake of clarity, all citations to the record will be to Case No. 2:15-cv-649 unless specified otherwise.

is nothing in the claims that saves them from covering ineligible subject matter.[3, 4]

When, as here, the only plausible reading of the claims shows that they are patent-ineligible, dismissal on the pleadings is appropriate. *See Clear with Computers*, 2015 WL 993392, at *3 and 6. The Supreme Court reaffirmed that the test for whether a patent is eligible under § 101 is a two-part process: a) determine whether the patent is directed toward a patent-ineligible concept; and b) determine whether there is "an inventive concept—*i.e.*, an element or combination of elements that is sufficient" to "'transform the nature of the claim' into a patent-eligible application." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). As discussed both herein and in Defendants' Motion, the claims of the '126 Patent fail both prongs.

### A. Loramax's Patent Implicates a Common, Abstract Idea That Has Been Ubiquitously Practiced As A Common Human Activity

Nothing in Loramax's opposition leads to any conclusion other than that the '126 Patent is directed to the **<u>abstract idea</u>** of distributing information based on user preferences. By way of an additional example, doctors' offices and other similarly situated services ask their patients/customers how they would prefer to be contacted with appointment reminders, *i.e.*, by mail, phone, or—more recently—by electronic mail or text. Such information about a patient's preferences is then stored with the patient's file, which can be accessed and followed when an

---

[3] Dismissal of this action is proper and independent of the burden of proof applied by the Court. Because the '126 Patent is invalid under either a preponderance of the evidence or clear and convincing standard as set forth herein, it is unnecessary for the Court to resolve the parties' dispute on the burden of proof. *See Intellectual Ventures I LLC v. Symantec Corp.*, Case No. 10-1067, 2015 WL 1843528, at *5-6 (D. Del. Apr. 22, 2015) (discussing various authorities regarding burden of proof, noting inconsistent non-controlling guidance from the Federal Circuit and varying approaches taken by District Courts, but finding it "unnecessary to resolve the parties' dispute over the standard of proof" because the "patents are patent ineligible even assuming . . . a burden of clear and convincing evidence").

[4] Loramax's argument regarding 35 U.S.C. § 282 (Opp. at 30-31) is contrary to United States Supreme Court law in *Alice* and must be rejected.

appointment reminder is needed. As demonstrated in Defendants' Motion, the asserted claims of the '126 Patent recite nothing more than this simple and abstract concept.[5]

In the wake of *Alice*, courts (including those in this District) have routinely invalidated similarly situated patents as directed toward an abstract concept. First, the Federal Circuit recently held that the similar concept of "categorical data storage, *i.e.*, the idea of collecting information in classified form, then separating and transmitting that information according to its classification" is an abstract idea. *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 Fed. Appx. 988, 992 (Fed. Cir. 2014); *see also Planet Bingo, LLC v. VKGS LLC*, 526 Fed. Appx. 1005, 1008 (Fed. Cir. 2014) (invalidating as abstract claims directed to "similar to the kind of 'organizing human activity' at issue in *Alice*."). Second, this Court recently recommended a patent covering "searching and retrieving information to be presented to a user" be found patent-ineligible. *Landmark Tech. v. Assurant, Inc.*, No. 6:15-cv-76-RWS-JDL, 2015 WL 4388311, at *4 (E.D. Tex. Jul. 14, 2015) (Love, J.). Similarly, this District has invalidated patents directed at customized sales proposals, where—as here—a user responds to a simple question resulting in a similarly simple response. (*Compare* '126 Patent, Claim 6 (claiming series of basic steps culminating in "responsive to the identification of the given subscriber and the selection of a mode of data receipt specified by the given subscriber, transmitting the predetermined data in the mode specified"), *with Clear with Computers*, 2015 WL 993392, at *4 (invalidating as abstract claims directed to the following steps "(1) present questions to, and receive answers from, a customer regarding products for sale; (2) based on at least one answer, select a picture of the product, a picture of the product environment, and a textual product description; and (3) put the

---

[5] Contrary to Loramax's assertion that Defendants failed to analyze "every single claim" (Opp. at 5), Defendants' motion fully analyzed claims 6 and 25, which are the only claims asserted by Loramax in its First Amended Complaint. (*See* Dkt. No. 16 at ¶ 19). Should Loramax assert other claims, Defendants reserve the right to file a supplemental brief as to those new claims.

pictures and text into a single visual output as part of a customized proposal for sale")).

In response, Loramax seeks to obscure the abstract nature of the claims by focusing the Court on the alleged "technical disclosure" of the patent, such as alleged "pseudo-code" within the patent, and on one "technical implementation of the invention" in the patent—specifically Figure 3. (*See* Opp. at 1 and 20-21). The Federal Circuit, however, has made clear that the proper focus of the § 101 analysis must be on the **minimum** a claim requires, not on a preferred example at the high end of what the claims covers. *Planet Bingo*, 576 Fed. Appx. at 1008 ("Planet Bingo argues that 'in real world use, literally thousands, if not millions of preselected Bingo numbers are handled by the claimed computer program,' making it impossible for the invention to be carried out manually. But the claimed inventions do not require as much. At most, the claims require 'two sets of Bingo numbers,' 'a player,' and 'a manager.'") (citation omitted); *see also Kroy IP Holdings, LLC v. Safeway, Inc*., Case No. 2:12-cv-800, 2015 WL 3452469, at \*19 (E.D. Tex. May 29, 2015) (Bryson, J., sitting by designation) (distinguishing "complexity in the application" from "complexity in the invention" and invalidating where "[t]he basic invention, as expressed in the claims, remains very simple and can fairly be described as embodying nothing more than an abstract idea implemented on a generic computer.").

Here, Loramax's focus on an alleged technical application of the claims is improper. When the claims themselves are considered, they are plainly directed to the abstract idea of distributing information based on basic user preferences and no specific, technical application of that idea is required by the claims. Step 1 of the *Alice* analysis is met here.

## B. Loramax Has Not Identified Any Inventive Concept That Transforms the Claims Into a Patent-Eligible Application

Turning to Step 2 of the *Alice* analysis, the claims of the '126 Patent do not amount to anything more than "an instruction to apply the abstract idea of [distributing information based

on user preferences] using some un-specified, generic computer." *Alice*, 134 S. Ct. at 2360. As such, the '126 Patent is similar to numerous patents recently found ineligible under *Alice*, as discussed above. Loramax responds with only red-herring arguments, such as claim construction, a self-serving interpretation of one application of the '126 Patent, and the machine-or-transformation test, none of which transform the abstract claims into eligible subject-matter. Thus, Step 2 of the *Alice* analysis is not avoided here and the '126 Patent claims are invalid.

### 1. Claim Construction Is Unnecessary

Loramax incorrectly argues that claim construction must occur prior to the eligibility analysis here. (*See* Opp. at 12-17). "There is no requirement that the district court engage in claim construction before deciding § 101 eligibility." *Cyberfone*, 558 F. Appx. at 991 n.1; *see also Clear with Computers*, 2015 WL 993392, at *3 (finding that "claim construction is unnecessary" where "the claim language is relatively simple and neither party has identified any disputes presently ripe for claim construction"). Rather, if the only plausible reading of the claims renders them ineligible, any disputes as to claim construction are immaterial disputes that do not require a formal claim construction process. *See id.*; *see also Clear with Computers LLC vs. Dick's Sporting Goods, Inc.*, 21 F.Supp.3d 758, 764 (E.D. Tex. 2014). The purpose of claim construction is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). Only when the parties raise an **actual dispute** regarding the proper legal scope of the claims must the Court resolve that dispute. *Id.* at 979.

Defendants have demonstrated that there is no plausible reading under which the claims

of the '126 Patent are patent-eligible.[6] In response, Loramax fails to identify any specific term or proposed construction that would provide some meaningful limitation to the claims and render them patent-eligible.[7] Loramax merely alleges, without any support, that the claims themselves require a special-purpose computer. Defendants have demonstrated that no such special-purpose computer is required as the claims themselves merely use generic computing elements, such as "electronic workstations," "electronic printers," "a server," and "a client." (Motion at 2 and 11-12). Moreover, the Court can make this determination by looking at the claim terms themselves without engaging in claim construction. *See eDekka LLC vs. 3Balls.com, Inc.*, Consolidated Case No. 2:15-cv-541, Dkt. 100 (E.D. Tex. Sept. 21, 2015) (invalidating patent without claim construction where plaintiff "asserts that the terms of the '674 Patent tie it to a special-purpose computer that limits the scope of the claims" but the claims merely included "generic terms . . . such as 'data structure,' 'data,' 'input,' and 'label.'").

Similarly, given the generic nature of the computer-based claim terms at issue here, no claim construction is necessary to determine that the claims involve nothing more than an

---

[6] Contrary to Loramax's subterfuge (*see* Opp. at n. 4 and Ex. A), Defendants had no obligation to*, inter alia*, waive their invalidity, infringement, or claim construction positions. Loramax cites to no authority requiring any such waiver and Loramax's related arguments should be rejected.

[7] Loramax improperly argues that dismissal is inappropriate because "no evidence from a PHOSITA can be taken nor can the claims be properly construed" at the Rule 12 stage. (Opp. at 16). Such an argument, if accepted, would vitiate the Court's ability to resolve § 101 disputes at the Rule 12 stage and is contrary to both Federal Circuit law and a large amount of post-*Alice* decisions (including those in this District, in which Courts make a § 101 determination by looking at the claims themselves without engaging in claim construction). *Cyberfone*, 558 F. Appx. at 991 n.1; *Clear with Computers*, 2015 WL 993392, at *3. If Loramax believed that meaningful evidence from a PHOSITA was required, then it could have introduced such evidence—and, indeed, requested an extension of its response deadline to obtain such evidence. (*See* Dkt. No. 23 at 2 ("Loramax needs additional time to confer with its consultant/expert and draft an expert declaration"). **Loramax submitted no such evidence.** If it had, then this Court could have converted this Motion into a motion for summary judgment, as other Courts in this District have recently done. *eDekka*, Consolidated Case No. 2:15-cv-541, Dkt. 100. In the absence of any attempt by Loramax to submit such evidence, its complaints ring hollow.

instruction to perform an abstract idea on a general purpose machine. Because the patent is ineligible on its face—under any plausible construction—and because Loramax has failed to identify any plausible claim construction that could create an actual dispute as to even a single claim term, Defendants request that the Court grant their motions to dismiss.

> **2. Loramax Has Not Shown That Any Additional Claim Elements Transform the Claims Into a Patent-Eligible Application**

The second prong of the *Alice* test requires that a patent claim involve something "significantly more" than an abstract idea and the words "apply it." *Alice*, 134 S. Ct. at 2355. Where the claims merely require the use of a general purpose computer to carry out an abstract idea, the requisite "something more" is not present. *Id.* at 2354, 2357. Here, the claims of the '126 Patent merely require a general purpose computer and are thus not limited to a particular technical field and improperly preempt the field of user-preferred communications.

In an effort to confuse the § 101 issue, Loramax attempts to focus the Court on one particular application or embodiment of the '126 Patent. (Opp. at 6-8 (citing Fig. 3 and Dkt. No. 16 at ¶ 12 (allegations regarding "pseudo-code"))). As discussed above, however, the proper focus of the § 101 inquiry is the minimum that a claim requires, not on a preferred example at the high end of what the claims covers. *Planet Bingo*, 576 Fed. Appx. at 1008; *Kroy*, 2015 WL 3452469, at *19; *DDR Holdings, LLC v. Hotels.Com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) (stating that it is insufficient to "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet"; rather the **claimed solution** must be directed to "a problem specifically arising in the realm of computer technology" and specify how computer technology should be manipulated to overcome the problem) (emphasis added). Thus, Loramax's focus on one particular embodiment in the '126 Patent is improper. (Opp. at 7 (describing Figure 3 as a "preferred embodiment") and Dkt. No.

16 at ¶ 12 (describing pseudo-code as an "example" or "a preferred technical schema")). Loramax's attempt to shift the focus from its abstract claims should be rejected.

When Loramax finally turns to the claims themselves, Loramax relies on the mere allegation that "for instance, claim 6 requires in [sic] a networked environment." (Opp. at 26). A networked environment without more is merely a general purpose computer setting and does not confer patent eligibility. *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive.").

The remainder of the elements in the claims are also generic computing elements. Loramax puts forth no argument that elements such as "electronic workstations," "electronic printers," "a server," and "a client," are non-generic. In addition, Loramax merely argues that the "identifying" and "automatically specifying" steps are non-generic because they occur in a "networked environment." (Opp. at 26). But as discussed above, a network is a generic computing environment—it is not a specially programmed computer or computing environment. Finally, Loramax attempts to argue that a "communication profile" is non-generic because it would "be stored in a specially programmed repository (*e.g.*, database)"[8] (Opp. at 7), or because such profiles could be accessed over the network (Opp. at 21). Both arguments merely recite generic computer elements—*i.e.*, storage in memory and a network. Loramax's arguments are tantamount to nothing more than a doctor's office taking its paper files (including patient contact preferences) and computerizing them in a generic computer setting. Under *Alice*, claiming such well-known practices in a generic computer setting is insufficient to earn a patent monopoly.

---

[8] Note, even Loramax does not require that a database be used, and rather merely offers a database as an <u>example</u> or embodiment of the claims. The claims do not require a database. Instead, generic computer memory is all that is needed.

Loramax's arguments that the claims require a special purpose computer focus on one embodiment in the patent rather than the claims. (*See* Dkt. No. 16 at ¶¶ 11-14 (discussing a "preferrd [sic] technical schema")). The claims, however, are not limited to any such preferred embodiment—or any preferred technical schema. Similarly, Loramax's arguments that the claims solve technical problems and are technological improvements are again based on Loramax's discussion of one embodiment of the invention or its own conclusory *ipse dixit*. (Opp. at 26-27). Conversely, the claims themselves are mere abstractions of methods that existed long before the '126 Patent, and the additional elements, to the extent that there are any, do nothing to improve the **technical** field. Any alleged solution or improvement that Loramax puts forth is equally applicable to the transition of any abstract idea to a generic computer environment.

Because the claims themselves do not contain "something more" to establish patent eligibility over the abstract idea of distributing information based on user preferences, Loramax turns to two self-serving arguments and supports them with improper allegations in its Complaint. First, Loramax argues without support that the claims require a specially programmed computer. (*See* Opp. at 28). Second, Loramax argues that the claims solve problems specific to the art of computer networking and systems and improve such systems. (Opp. at 26-27). In support of each, Loramax relies on self-serving, irrelevant, and improper allegations in its Complaint rather than the claims themselves. (*See* Opp. at 26-28 (citing Dkt. No. 16 at ¶¶ 11-14)). Loramax improperly attempts to use its Complaint to re-write the claims of the '126 Patent.

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing of entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Importantly, however, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Here, the allegations relied upon by Loramax in

its Complaint are legal conclusions regarding claim scope and need not be accepted as true. *See, e.g.*, *MyMail, Ltd. v. Am. Online, Inc.*, 223 F.R.D. 455, 456 (E.D. Tex. 2004) (holding that claim scope is a "legal question"). The Court should reject Loramax's attempts to turn legal inquiries into factual allegations and thus invade the province of the Court to decide such matters.

### 3. The Machine-or-Transformation Test Is Inapplicable

The '126 Patent fails both prongs of the machine-or-transformation test. The machine-or-transformation test provides that a process is patentable if "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Since *Bilski*, the test has been used as an investigative tool—but not a determinative test. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014).

The machine prong of the test is not satisfied where—as here—the claims are "not tied to any particular novel machine or apparatus, only a general purpose computer." *See id.* Because the claims of the '126 Patent only require a general purpose computer, as discussed above, the machine prong is not satisfied.

The transformation prong is not satisfied where the claims do not transform any particular article into a different state or thing but instead involve "mere manipulation or reorganization of data." *See Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011). Here, the claims merely take predetermined data and distribute it in a preferred manner. This is not transformation of data—and Loramax's one-sentence, conclusory assertion to the contrary should be rejected.

## II. CONCLUSION

Because the asserted claims do not cover patent-eligible subject matter and because Loramax has not raised any fact issues to the contrary, Defendants respectfully request that the Court grant their motions to dismiss this case with prejudice.

Dated: October 16, 2015                    Respectfully submitted,

By:   */s/ Wasif Qureshi*
Neil J. McNabnay
njm@fr.com
Texas Bar No. 24002583
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

Wasif Qureshi
qureshi@fr.com
Texas Bar No. 24048155
**FISH & RICHARDSON P.C.**
1221 McKinney Street, Suite 2800
Houston, Texas  77010
(713) 654-5300  (Telephone)
(713) 652-0109  (Facsimile)

**Attorneys for Defendants**
**American Century Proprietary Holdings, Inc.**
**BlackRock, Inc.**
**Colonial Life & Accident Insurance Co.**
**Dodge & Cox**
**Dodge & Cox Funds**
**The Dreyfus Corporation**
**Eaton Vance Corp.**
**Invesco Ltd.**
**Invesco Distributors, Inc.**
**Jackson National Life Insurance Co.**
**Janus Capital Group Inc.**
**Janus Int'l Holding LLC**
**Legg Mason Investor Services, LLC**
**Lincoln National Corporation**
**Lord Abbett Distributor LLC**
**Massachusetts Mutual Life Insurance Co.**
**MFS Fund Distributors**
**New York Life Insurance Co.**
**Oppenheimer Funds Distributor, Inc.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 16, 2015, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Wasif Qureshi*
Wasif Qureshi